In the Full Commission's prior Opinion and Award, plaintiff's back injury was found to be compensable and he was awarded continuing temporary total disability benefits. Upon appeal of defendants, this matter was then reviewed by the North Carolina Court of Appeals. In its 8 September 1998 decision, the Court of Appeals found that the Commission had failed to make a proper finding on medical causation and remanded this case for the entry of a proper finding. Additionally, the Court of Appeals found that the Commission's award of temporary total disability benefits to plaintiff was improper given that he had reached maximum medical improvement. On this issue, the award of benefits to plaintiff was reversed.
The Full Commission has now reviewed its prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Richard B. Ford, the supplemental briefs of the parties and in accordance with the decision by the North Carolina Court of Appeals. Defendants' Motion for Oral Arguments is DENIED. Having again reconsidered the evidence of record, the Full Commission enters the following Opinion and Award which finds that plaintiff has sustained a compensable injury by accident resulting in the award of permanent and total disability compensation.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner on 22 May 1996 as:
 STIPULATIONS
1. At the time of the alleged injuries giving rise to these claims, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At such times, an employment relationship existed between plaintiff and defendant-employer.
3. At such times, GAB Business Services was the carrier on the risk.
4. An Industrial Commission Form 22 Wage Statement has been stipulated into evidence.
5. The medical records of Doctor's Urgent Care, consisting of 4 pages and marked as stipulated exhibit 1, has been received into evidence.
6. A packet of medical records consisting of 40 pages is received into evidence.
7. The deposition of Dr. James E. Rice of the Sandhills Orthopaedic and Spine Clinic, taken on 4 September 1996 and consisting of 30 pages with attached plaintiff's deposition exhibit 1, has been received into evidence.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing on 22 May 1996, plaintiff was a thirty-eight (38) year old male with a tenth grade education. Plaintiff's prior work experience consists of performing maintenance work and working in various types of construction jobs.
2. Plaintiff was first employed by defendant-employer as a last puller on 24 October 1977. In 1985, plaintiff was laid-off from this position but was re-hired on 7 February 1991. As part of his duties as a last puller, plaintiff was required to place metal last "foot molds" into a basket which was then placed into a buggy and transported to the assembly line. On average, a basket weighed approximately fifty (50) pounds and held between fifty to sixty (50-60) lasts.
3. On 19 April 1994, plaintiff was in the process of unloading the buggy and picked up a basket of lasts and placed them on the floor. During the process of placing the basket on the floor, plaintiff experienced the onset of sharp pain in the right side of his lower back located at, or near, his belt-line. This pain also radiated down into plaintiff's right leg.
4. Plaintiff reported the incident to his foreman, who in turn provided plaintiff with a note to report to the company nurse. Plaintiff went to the company nurse and reported low back pain. The company nurse applied heat to plaintiff's back. Because plaintiff was unable to resume his duties, he was sent home for the remainder of the day.
5. On 21 April 1994, plaintiff presented himself to Doctor's Urgent Care in Lumberton, North Carolina. Plaintiff complained of tenderness in his low back which had begun on 19 April 1994 while he was at work. Plaintiff was diagnosed as having a lumbar strain, was provided medication and instructed to return to work on light duty. Plaintiff returned to Doctor's Urgent Care on 25 April 1994 and 29 April 1994 for additional examinations and treatment.
6. On 3 May 1994, despite the fact that he was still experiencing pain, plaintiff returned to work for defendant-employer. However, plaintiff resumed his regular duties rather than returning to a light duty position which had been recommended.
7. On 16 May 1994, plaintiff was picking up a basket of lasts when he experienced the onset of pain in the left side of his lower back with radiating pain down his left leg.
8. Again plaintiff reported the incident to his foreman and was provided a note to report to the company nurse. Once again the company nurse applied heat to plaintiff's lower back.
9. On 1 November 1994, plaintiff was seen again by the plant nurse with complaints of back pain. At that time, plaintiff associated his pain as having been present since 19 April 1994.
10. Plaintiff continued to perform his regular duties from 3 May 1994 through defendant-employer's Christmas break. On 2 January 1995, plaintiff returned to work and after working a few hours reported to his foreman that he could not continue working because of pain he was experiencing. Plaintiff has been unable to return to his position with defendant or work in any other capacity since that date.
11. Plaintiff presented himself to Dr. Veda N. Thakur of Lumberton. Dr. Thakur recommended that plaintiff undergo an MRI. Plaintiff's MRI revealed a central herniated disc at L4-L5 and L5-S1 with left lateral recess encroachment at L4-L5 and right neural foramen encroachment at L4-L5 and L5-S1.
12. On 21 February 1995, plaintiff was examined by Dr. James Rice of the Sandhills Orthopaedic Clinic. On 21 March 1995, plaintiff underwent a left L4-5 diskectomy performed by Dr. Rice. On 29 September 1995, plaintiff underwent a repeat L4-5 diskectomy.
13. On 19 April 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident.
14. On 16 May 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident which resulted in the aggravation of his back condition.
15. Dr. Rice has opined that plaintiff's back condition on 21 February 1996 was caused by the combined effects of his 19 April 1994 and 16 May 1994 work related injuries. Dr. Rice has also opinee that plaintiff was incapable of returning to any gainful employment during his period of treatment from 21 February 1995 through 14 August 1996. Dr. Rices' opinions on these issues are accepted as credible and are accorded significant weight.
16. Plaintiff's back condition, which resulted in multiple surgeries, was caused by the combined effect of his 19 April 1994 injury by accident and his 16 May 1994 injury by accident.
17. Plaintiff reached maximum medical improvement on 4 September 1996, at which time he was assigned a twenty percent (20%) permanent partial disability rating to his back. Additionally, Dr. Rice assigned plaintiff permanent work restrictions. A position consistent with these permanent restrictions would permit plaintiff to frequently change positions, limit his bending and stooping and require no lifting of more than twenty-five (25) pounds.
18. As the result of his 19 April 1994 and 16 May 1994 injuries by accident, plaintiff was incapable of earning wages in his former position with defendant-employer or in any other employment for the period of 2 January 1995 to 4 September 1996.
19. In G.S. § 97-2(9), disability is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." Thus, "disability" under the Act relates to an employee's capacity to earn wages following a compensable injury, not to the employee's physical condition. Our Supreme Court has established that in order to find an employee disabled, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment; (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and; (3) that this individual's incapacity to earn wages was caused by his injury.See Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). Based upon these standards, plaintiff has met his initial burden of proving that he was totally disabled as the result of his injuries by accident and proper findings on this issue have been entered by the Full Commission.
20. Having met his initial burden of proving total disability, plaintiff is entitled to a rebuttable presumption that his disability will continue until he returns to work at the same or greater wages. A defendant may rebut this presumption by producing evidence that: (1) suitable jobs are available for the employee; (2) that the employee is capable of securing said job taking into account the employee's physical and vocational limitations, and; (3) that the job would enable the employee to earn some wages. Brown v. S N Communications, Inc.,124 N.C. App. 320, 477 S.E.2d 197 (1996). The Court of Appeals has specifically held that a finding that the employee has reached maximum medical improvement does not rebut this presumption as this finding "is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury." Id.
Therefore, even though plaintiff reached maximum medical improvement on 4 September 1996, the burden of proof remained with defendants to produce sufficient evidence to rebut the presumption of continued disability. In response to this burden, defendants have produced no evidence that any suitable jobs were available for or offered to plaintiff on 4 September 1996. In fact, defendants have denied plaintiff's claim throughout, so no efforts have been made to locate employment for plaintiff either before or after he reached maximum medical improvement. Therefore, plaintiff, whose disability was total prior to 4 September 1996, is entitled to the presumption of continued total disability subsequent to that date.
21. Under the current law in North Carolina, a plaintiff who may be entitled to benefits under G.S. § 97-29 or G.S. §97-30 as well as to benefits under G.S. § 97-31, is entitled to select the more favorable remedy. Gupton v. BuildersTransport, 320 N.C. 38, 357 S.E.2d 674 (1987). On 4 September 1996 plaintiff reached maximum medical improvement and was assigned a twenty percent (20%) permanent partial disability rating for his back. Notwithstanding this rating, under the presumption of continued disability, plaintiff continued to be totally disabled as of that date. Given the obvious unfairness of merely awarding plaintiff, who continued to be totally disabled, permanent partial disability compensation under G.S. § 97-31, the more favorable remedy under the facts of this case would be the award of total disability benefits under G.S. § 97-29.
22. Previously, the inquiry would then move to determining whether plaintiff's total disability was temporary or permanent. Under a continuing temporary total approach, a defendant could locate and provide suitable employment to a plaintiff at the same or greater wage level, plaintiff's total disability would end and payments of compensation could cease. However, under our current mandate, only an award of permanent and total disability compensation could be awarded after plaintiff reached maximum medical improvement. Permanent and total disability benefits have been traditionally awarded to an employee on a lifetime basis, absent the limiting conditional language of an award of continuing temporary total disability: "until plaintiff returns to work or until further Order of the Commission." Consequently, a defendant would not have the option of locating suitable employment for a plaintiff, who would have a lower incentive to attempt to return to work. Certainly, a result such as this does not foster the goals of the Workers' Compensation Act.
23. In addition to the practical consequences of this result, it would appear that the focus of inquiry has been on plaintiff's physical condition, rather than on his capacity to earn wages. Following his injury by accident, there were aspects of plaintiff's physical condition that were temporary in nature and had resolved at the point he reached maximum medical improvement. However, the temporary nature of these physical elements and their transition to a stabilized orpermanent condition when plaintiff reached maximum medical improvement should not be the controlling factors in determining whether his disability (his capacity to earn wages) is temporary or permanent. Nevertheless, the Full Commission will, and has herein, complied with the decision of the Court of Appeals.
24. As the result of his 19 April 1994 and 16 May 1994 injuries by accident, plaintiff has continued to been incapable of earning wages in his former position with defendant-employer or in any other employment since 4 September 1996
25. Plaintiff's average weekly wage on the relevant dates herein was $379.91, yielding a compensation rate of $253.29.
 ***********
Based upon the Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on the relevant dates herein was $379.91, yielding a compensation rate of $253.29. G.S. 97-2(5).
2. On 19 April 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident. G.S. § 97-2(6)
3. On 16 May 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident which resulted in the aggravation of his back condition.Id.
4. As the result of his 19 April 1994 and 16 May 1994 injuries by accident, plaintiff is entitled to have defendants pay temporary total disability compensation at the rate of $253.29 per week, from 2 January 1995 to 4 September 1996. G.S. § 97-29.
5. If supported by the facts of the case, plaintiff is entitled to select the more favorable remedy between receiving benefits under G.S. § 97-31, G.S. § 97-30 or under G.S. § 97-29. Gupton v. Builders Transport, 320 N.C. 38,357 S.E.2d 674 (1987). Given the obvious unfairness of merely awarding plaintiff, who is totally disabled, permanent partial disability compensation under G.S. § 97-31, the more favorable remedy justified under the facts of this case would be the award of benefits under G.S. § 97-29. Id.
6. Having met his initial burden of proving his disability, plaintiff is entitled to the rebuttable presumption of continuing disability. G.S. § 97-2(9); Watson v. Winston SalemTransit Authority, 92 N.C. App. 473, 374 S.E.2d 483 (1988). Because plaintiff's inability to earn wages in his former position with defendant-employer or in any other position continued subsequent to 4 September 1996, his disability on that date was total and the presumption to which he was entitled to was a presumption of continued total disability. Id.
Defendants have failed to produce evidence that suitable jobs were available to plaintiff subsequent to 4 September 1996 and have otherwise failed to rebut this presumption. Id.;Brown v. S N Communications, Inc., 124 N.C. App. 320,477 S.E.2d 197 (1996). Furthermore, the fact that plaintiff has reached maximum medical improvement does not rebut this presumption or relieve defendants of their burden. Id.
7. As the result of his 19 April 1994 and 16 May 1994 injuries by accident and pursuant to the decision by the Court of Appeals in this matter, plaintiff is entitled to have defendants pay permanent and total disability compensation at the rate of $253.29 per week for the period of 4 September 1996 and continuing for the remainder of his lifetime or until further Order of the Commission. G.S. § 97-29.
8. As a result of his injury by accident on 19 April 1994, plaintiff is entitled to have defendants pay for all medical expenses incurred during his lifetime, including expenses related to the treatment provided by Dr. Rice. G.S. § 97-25.
 ************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $253.29 per week for the period of 2 January 1995 to 4 September 1996. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendants shall pay permanent and total disability compensation to plaintiff at the rate of $253.29 per week for the period of 4 September 1996 and continuing for the remainder of his lifetime or until further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
3. Defendants shall pay for all medical expenses incurred by plaintiff during his lifetime as the result of his 19 April 1994 and 16 May 1994 injuries by accident, including expenses related to the treatment provided by Dr. Rice.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs.
 S/_________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/______________________ DIANNE C. SELLERS COMMISSIONER