The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. As the appealing party has shown good ground to reconsider the evidence; the Full Commission modifies Conclusions of Law # 4 but otherwise affirms the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employee is Randy Lyda.
2. The employer is Sapphire Lakes.
3. The carrier on the risk as of 7 March 1995 was Aetna Casualty Surety Company (now part of Travelers Property 
Casualty Company).
4. The average weekly wage of plaintiff is to be determined by the Industrial Commission.
5. Defendants have paid temporary total disability benefits from 8 March 1995 through 15 October 1996 pursuant to a Form 60.
6. The date of the original injury is 7 March 1995.
7. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act.
8. Plaintiff introduced as Exhibits: I.C. Form 19 dated 3/8/95; I.C. Form 60, dated 4/10/95, Admission of Right to Compensation Pursuant to N.C.G.S. § 97-18(b); I.C. Form 28; I.C. Form 28B, dated 10/15/96, Report of Carrier of Compensation and Medical Compensation Paid indicating plaintiff's last compensation was forwarded 10/9/96 and total compensation paid was $40,152.00 or 84 weeks; I.C. Form 18 and 33R; N.C. Builders Trust — Workers' Compensation Application filled out by plaintiff dated 7/7/95.
9. Defendants submitted the following Exhibits: Letter dated 11/14/96 from Karen Beam to Elsie Boyd withdrawing a Form 24; Surveillance Report by Howard Investigations, Inc. dated 12/1/95; Surveillance Report by Howard Investigations dated 1/8/96; Plaintiff's Answers to Defendants' First Request for Production of Documents; Plaintiff's Response to Defendants' Request for Admission of Facts and Genuineness of Documents to Plaintiff; Accord Certificate of Insurance for dates 7/11/95 through 12/31/95; Accord Certificate of Insurance for dates 1/1/96 through 12/31/96.
10. Deposition of Dr. James Hoski dated 7 January 1998.
***********
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, born 6 November 1963, completed the ninth grade and was raised in the Brevard area of North Carolina. Due to plaintiff's problems with reading and spelling, he was unable to obtain a GED. He has primarily done tree work most of his adult life. Most of this tree work consisted of trimming out views for new homes, and topping and removal of dead tress close to houses. Plaintiff has been married fourteen years and has four children, ages 12, 8, 6, and 10 months. He lives in a house near Sapphire Lakes on four and half acres. On his property, he has horses, cows, turkeys, chickens, pigs, goats, and ducks. Plaintiff grew up on a farm.
2. Plaintiff began working for defendant-employer in either 1988 or 1989. He worked directly under the supervision of Ken Wheat. Mr. Wheat would direct him as to what lots he wanted cleared of underbrush and a view cut out from the trees for a potential house site. Mr. Wheat would come back and check on the work performed by plaintiff.
3. Defendant-employer was involved in developing its subdivision, clearing and selling lots and construction of houses on the lots as well as the construction and development of a golf course.
4. Plaintiff generally had other workers assisting him. Defendant-employer would pay plaintiff, who in turn paid other workers so much per man per hour. Plaintiff kept track of the hours and submitted that to Mr. Wheat and one check was made payable to plaintiff. That check would also include an amount for the use of plaintiff's tools. There were no withholdings from any of the funds received by plaintiff or the other workers.
5. When plaintiff originally began working for defendant-employer, defendant-employer deducted 12% of his income for workers' compensation coverage. At the time of plaintiff's accident and injury, the amount of the deduction had increased to 17%. Defendant-employer obtained a policy of workers' compensation insurance covering plaintiff from Aetna Casualty 
Surety (now Travelers Insurance Company).
6. Calculation of plaintiff's average weekly wage cannot include sums paid for plaintiff's employees or paid for the use of plaintiff's tools or equipment.
7. Documentation submitted under oath in discovery by defendant-employer established that the amounts paid plaintiff inclusive of payments for plaintiff's employees and tools and equipment for the 52 weeks prior to plaintiff's injury by accident totaled $32,242.34. This amount, divided by 52 weeks, results in an amount of $620.05 per week. Plaintiff's average weekly wage must be less than $620.05 per week, as that amount includes amounts for plaintiff's employees' compensation and plaintiff's tools and equipment.
8. Plaintiff's average weekly wages is found to be $296.13, based upon earnings of $15,399.00 reported to the United States Internal Revenue Service by plaintiff on his 1994 Income Tax Return, Form 1040, for the 52 weeks of 1994. An average weekly wage yields a weekly compensation rate of $197.42.
9. Plaintiff was injured on 7 March 1995 while clearing a lot for defendant-employer which was located on a steep bank. It had been raining and drizzling. Plaintiff was in the process of carrying logs from a cut tree up the embankment to the top of the hill when his feet flew out from under him in the mud and he fell on his back. He was carrying approximately 30-40 pounds. Plaintiff immediately felt back and hip pain. He also had a headache and had difficulty focussing. Plaintiff reported his accident and injury to Mr. Wheat. Prior to the injury on 7 March 1995, plaintiff was healthy and had never had any prior back problems.
10. On 10 April 1995, defendant-carrier submitted to the Industrial Commission a Form 60, "Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b)" admitting plaintiff's right to compensation for the 7 March 1995 accident. The Form 60 listed plaintiff's average weekly wage as $860.00, yielding a maximum compensation rate at the time of $478.00.
11. Pursuant to the Form 60, defendants paid plaintiff 84 weeks of compensation at $478.00 per week, for a total of $40,152.00. As the undersigned have determined that plaintiff's compensation should have been calculated based upon an average weekly wage of $296.13, yielding a compensation rate of $197.42, defendants overpaid plaintiff during the 84 weeks of compensation payments by $23,568.72.
12. Plaintiff was seen in the emergency room of Transylvania Community Hospital on 7 March 1995 and was written out of work until 14 March 1995. He returned on 10 March 1995 with complaints of pain and was referred to Dr. Angus Graham, III, an orthopaedic surgeon. Dr. Graham diagnosed him with a lumbar strain and bilateral lumbar spondylosis, L5 and sent him for physical therapy at Brevard Physical Therapy where he did not improve. An MRI on 26 April 1995 revealed a disc herniation at L4-5 left. Thereafter, the doctor found him to be temporarily totally disabled and administered lumbar epidural steroid injections on 8 and 9 May 1995. On 31 May 1995, Dr. Graham permitted him to return to restricted duty with no lifting over 30 pounds and no tree climbing. Due to increased back pain, surgery was performed on 1 August 1995 at which time Dr. Graham did an L4-5 laminectomy and discetomy. Again plaintiff underwent physical therapy from 29 August through 30 October 1995. On 30 September 1995 Dr. Graham opined that plaintiff was still temporarily totally disabled. He noted intermittent pain radiating down the back into both legs. The doctor discussed with plaintiff the possibility of plaintiff changing jobs so that he would not be doing heavy manual labor.
13. A functional capacity evaluation performed at Brevard Physical Therapy on 31 October 1995 indicated a light-medium physical demand level. Due to plaintiff's continuing severe periods of pain, on 1 November 1995 Dr. Graham recommended that plaintiff undergo an evaluation by a spinal expert at Blue Ridge Rehabilitation.
14. At Blue Ridge Rehabilitation, plaintiff was evaluated by Dr. James J. Hoski and Dr. Fitzgerald who recommended a comprehensive work-hardening program, which plaintiff attended.
15. On 28 February 1996, Dr. Graham released the plaintiff at maximum medical improvement with a 10% permanent partial disability to his back and no lifting over 30 pounds, no standing, sitting or walking more than 30 minutes without being able to change positions, no lifting of objects off of the floor greater than 10 pounds.
16. Plaintiff returned to Dr. Graham on 6 March 1996 with a flare-up of pain in his back after using a small chain saw to saw up poplar logs. An MRI on 4 September 1996 showed a residual disc at L4-5 level on the left.
17. Dr. James J. Hoski was stipulated to be an expert in the field of medicine with a specialty in orthopaedics and is board certified in orthopaedic surgery. Beginning with the 7 October 1997, visit Dr. Hoski became plaintiff's treating orthopaedic surgeon. On that date and thereafter Dr. Hoski had a number of diagnostic tests performed which revealed that plaintiff did not display any overt pain behavior and no evidence of symptom magnification. In Dr. Hoski's opinion, plaintiff was suffering from pain secondary to a recurrent disc herniation at L4-5 and also spondylolisthesis at L5. Both Dr. Hoski and Dr. Graham recommended a second surgery. Dr. Hoski recommended that plaintiff undergo a fusion of the two discs L5-S1. This was similar to his recommendation which he had made on 7 October 1996 but the difference was in the technique. In 1996, Dr. Hoski recommended a posterior fusion. Since the FDA approved the anterior fusion, he thereafter recommended an anterior procedure.
18. Dr. Hoski testified, and the undersigned find, that plaintiff's condition requiring surgery on 7 October 1996, and thereafter was probably caused by the original compensable fall and injury of 7 March 1995. The chain saw incident of 6 March 1996 was a mere exacerbation and the "unlikely" cause of the recurrent disc necessitating surgery. But for his fall and injury of 7 March 1995, plaintiff would not have had the subsequent herniated disc and the pain and problems that he had during the last several years necessitating a second surgery.
19. The plaintiff's condition requiring surgery was a direct and natural consequence of the 7 March 1995 injury by accident.
20. Dr. Hoski agreed with the limitations set by Dr. Graham on 28 February 1996.
21. Plaintiff has not yet undergone the surgery recommended by Dr. Graham and Dr. Hoski.
22. The medical treatment, including the surgery performed on 1 August 1995, was reasonably necessary to treat plaintiff's condition.
23. Dr. Hoski described plaintiff's work with the defendant as being in the heavy or very heavy physical demand level.
24. After plaintiff's 1 August 1995 surgery he was required by defendant-employer to operate as a sole proprietor and provide his own workers' compensation coverage for his co-workers. Eventually he discontinued doing that as he was not making any money. Plaintiff communicated these business transactions with Mark Weaver, the workers' compensation adjuster for defendant-carrier, who was handling plaintiff's claim at this time.
25. Defendants, without authorization from the Industrial Commission, unilaterally discontinued plaintiff's temporary total disability compensation 10 October 1996. Defendants had filed a Form 24, Application to Terminate Compensation, in this matter on 16 October 1996. By letter dated 14 November 1996, defendants informed Yvonne E. Bullock, Special Deputy Commissioner, assigned to hear such applications, that the Form 24 application had been withdrawn. By Order of the Industrial Commission, defendants' application to terminate compensation was removed from the informal hearing calendar and the application treated as though it were withdrawn. It was further ordered that "should a dispute arise hereafter which is not resolved by the parties, the defendants may submit a new Form 24 setting forth the new issue or either party may request a hearing by submission of a Form 33 setting forth the dispute." The original basis for the Form 24 filed by the defendants was that the plaintiff was receiving "income for jobs done while receiving workers' compensation benefits." Plaintiff who was then unrepresented, filled in Section B contesting the application Form 24. Plaintiff contended that he was not making any profits from his attempt to operate a business as an independent contractor.
26. Plaintiff has physically been unable to return to his employment since his accident of 7 March 1995.
27. Plaintiff has been without any income or benefits since 10 October 1996 except for occasional and inadequate income from his attempts to return to work Thus, except for his failed attempts to return to work, as a result of the 7 March 1995 accident, plaintiff has been temporary totally disabled since 7 March 1995 and continuing.
***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury on 7 March 1995 which defendants accepted as compensable pursuant to a Form 60. N.C. Gen. Stat. § 97-18(b). While there is no presumption of disability attached to the filing of a Form 60, plaintiff has come forward with additional evidence that he has not regained his pre-injury wage earning capacity. N.C. Gen. Stat. §§ 97-2(6),97-29. See also, Sims v. Charmes/Arby's Roast Beef, (I.C. No. 489198, filed 7 October 1998). Watson v. Winston-Salem TransitAuthority, 92 N.C. App. 473, 374 S.E.2d 483 (1988); Watkins v.Central Motor Lines, Inc., 279 N.C. 132, 181 S.E.2d 588 (1971).
2. All of plaintiff's back problems, including his recurrent disc, are causally related to his compensable accident of 7 March 1995.
3. Plaintiff has been temporarily totally disabled from 7 March 1995, except for those short periods of time when he unsuccessfully attempted to return to work. N.C. Gen. Stat. §97-29.
4. The compensation paid by defendants to plaintiff for a period of 84 weeks following his injury constitute an overpayment of $23,568.72 based upon an incorrect average weekly wage calculation. Defendants would be entitled to a credit for this overpayment. Accordingly, the overpayment of $23,568.72 is deemed by the undersigned to constitute a pre-payment for the amounts due plaintiff from the date compensation was wrongfully terminated until the date it was resumed pursuant to the Opinion and Award of the Deputy Commissioner. Because plaintiff's compensation payments during the period when defendants wrongly terminated payments are deemed herein to have been pre-paid, plaintiff is not entitled to a penalty for late payment of compensation due and payable pursuant to N.C. Gen. Stat.97-18(g). Defendants are entitled to a credit for any amount which remains an overpayment for the period from 15 October 1996 until payments were resumed. N.C. Gen. Stat. § 97-42.
***********
 AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $197.42 per week for the temporary total disability he sustained as a result of this injury by accident and continuing until defendants are authorized to terminate such payments by further order of the Industrial Commission. Payments shall commence when the overpayment by defendants following plaintiff's injury is subsumed by the aggregate of plaintiff's due and payable benefits.
2. Defendants shall pay all medical treatment of the injury by accident giving rise to this claim.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff is approved by the undersigned. For the amount of compensation pre-paid to plaintiff by virtue of defendants' overpayment, plaintiff is responsible for counsel's fee of twenty-five percent of that amount. For the continuing compensation payments, defendants shall forward every fourth check of weekly compensation benefits due to plaintiff directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the ___ day of April, 1999.
 S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS:jbd