DELOIS WATSON v. WINSTON-SALEM TRANSIT AUTHORITY AND UTICA MUTUAL INSURANCE COMPANY

No. 8810IC426

(Filed 30 December 1988)

**Master and Servant § 69.1— workers' compensation—employee who has reached maximum medical improvement—employer's refusal to allow employee's return—employee still temporarily totally disabled**

> The Industrial Commission erred in finding that because plaintiff reached maximum medical improvement she was not entitled to additional temporary total disability payments for the time her employer refused, out of concern for her safety, to allow her to return to work, since a finding of maximum medical improvement is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury; though plaintiff may have been "ready, willing and able to return to work," she was not able to work and earn any wage from this employer; and the record contained no evidence from which it could be determined whether any other employer would have hired plaintiff at the time she reached maximum medical improvement. N.C.G.S. § 97-2(9).

APPEAL by plaintiff from an opinion and award of the Industrial Commission entered 14 December 1987. Heard in the Court of Appeals 6 December 1988.

This is a workers' compensation case. Plaintiff, Delois Watson, has worked cleaning buses for her employer, American Transit Corporation, for about seventeen years. American Transit is a private corporation under contract with the City of Winston-Salem. On 16 May 1984 plaintiff injured her right knee on the job. Defendants admitted liability under the Workers' Compensation Act (Act) and paid weekly temporary total disability benefits to plaintiff under approved settlements through 21 November 1984. Plaintiff did not work during this time period. On 21 November 1984 plaintiff's treating physician, Dr. Stephen Homer, examined her and noted on a prescription slip that she could return to work "as her comfort permits." At this point Dr. Homer also determined that plaintiff had a twenty percent permanent partial disability of her right knee.

The following day plaintiff asked Mr. James M. Ritchey, Jr., American Transit's General Manager, if she could return to work. Mr. Ritchey, concerned for plaintiff's safety, refused to allow her to return to work. A number of factors appear to have influenced

this decision. First, a different employee had previously returned to work following a knee injury and, subsequently, became more seriously injured. Plaintiff here is also a member of Transport Workers' Union #248 and a collective bargaining agreement governs her relationship with her employer. The agreement is not part of the record on appeal. Additionally, there was no "light" work available for her at the workplace.

Plaintiff executed a supplemental agreement in which it was recited that on or about 22 November 1984 she had reached "maximum medical improvement." Plaintiff received no further total disability benefits but received a lump sum payment representing an award of permanent partial disability for a period of forty weeks.

Because plaintiff wanted to return to work, Ritchey wrote Dr. Homer on 26 December 1984 asking him to review her case to determine whether she could "complet[e] all of her regular duties." In a 31 December 1984 letter responding to Ritchey's letter, Dr. Homer restated his earlier expressed opinion that plaintiff was "currently unable to resume her full activities." Plaintiff was then sent to Dr. A. D. Kornegay for additional consultation. On 31 January 1985 Dr. Kornegay concluded that plaintiff could return to work. Due to this conflict of medical opinions and pursuant to the collective bargaining agreement, Ritchey sent plaintiff to a third physician, Dr. Isabel Bittinger. On 28 May 1985, Dr. Bittinger agreed that plaintiff could return to work. Four days later, on 1 June 1985, Ritchey allowed plaintiff to resume her normal duties.

In order to receive additional temporary total disability benefits for the period of time she was not allowed to work (22 November 1984 through 31 May 1985), plaintiff brought this action. Deputy Commissioner Lawrence B. Shuping, Jr. denied plaintiff's request for additional benefits. Plaintiff appealed to the full Commission. The Industrial Commission adopted the Deputy Commissioner's opinion as its own and affirmed with two modifications. Plaintiff appeals.

*Legal Aid Society of Northwest North Carolina, Inc., by Luellen Curry and Ellen W. Gerber, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, by George W. Dennis, III and John C. W. Gardner, Jr., for defendant-appellee.*

EAGLES, Judge.

In this workers' compensation case plaintiff, Delois Watson, claims that she should receive continuing temporary total disability benefits for the period of time that her employer refused to allow her to return to work. We hold that the Industrial Commission erred in finding that because plaintiff reached maximum medical improvement she was not entitled to additional temporary total disability payments. Accordingly, we vacate and remand.

The standard of review in workers' compensation cases is whether there is any competent evidence before the Industrial Commission to support its findings and whether the Commission's findings support its conclusion. *Armstrong v. Cone Mills Corp.*, 71 N.C. App. 782, 323 S.E. 2d 48 (1984). The Act compensates a worker for work related injuries which prevent him from earning the equivalent amount of wages he was making before his injury. *See Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978). Our courts have ruled that in order to receive compensation for disability, the mere fact of an injury is not sufficient but rather the injury must have caused some impairment in the worker's earning capacity. *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 155 S.E. 2d 755 (1967).

G.S. 97-2(9) defines disability as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Accordingly, in *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E. 2d 682, 683 (1982), our Supreme Court ruled that in order to find a worker disabled under the Act the Commission must find:

(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment,

(2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and

(3) that this individual's incapacity to earn was caused by plaintiff's injury.

Initially, the claimant must prove the extent and degree of his disability. *Armstrong* at 784, 323 S.E. 2d at 49. On the other hand,

once the disability is proven, there is a presumption that it continues until "the employee returns to work at wages equal to those he was receiving at the time his injury occurred." *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E. 2d 588, 592 (1971).

Here plaintiff has carried her initial burden of showing that she was disabled. The record indicates that she began to receive temporary total disability payments in May 1984. The payments continued until November 1984. On 21 November 1984 her treating physician reported that she could return to work "as her comfort permits." There was no "light" work available for plaintiff nor would her employer allow her to return to work to perform her old duties. Additionally, though not in this record, the briefs indicate and the opinion and award make reference to the fact that plaintiff had signed a statement in which it was recited that she had reached maximum medical improvement on 22 November 1984.

Defendant-employer argues that the medical testimony and plaintiff's stipulation all point to the conclusion that on 22 November 1984 plaintiff was capable of earning the same wages that she had earned prior to her injury, that plaintiff's stipulation of maximum medical improvement supports the Commission's finding of maximum medical improvement and that we are bound by this finding. A finding of maximum medical improvement is not, however, the equivalent of a finding that the employee is able to earn the same wage earned prior to injury, and accordingly does not, by itself, dispose of plaintiff's claim. The maximum medical improvement finding is solely the prerequisite to determination of the amount of any permanent disability for purposes of G.S. 97-31. *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 326 S.E. 2d 328 (1985).

The Commission still must determine whether plaintiff was legally disabled under the Act. *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981). As Professor Larson explains in his treatise:

> The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: The first ingredient is disability in the medical or physical sense, as

evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages, as evidenced by proof that claimant has not in fact earned anything.

The two ingredients usually occur together; but each may be found without the other: A claimant may be, in a medical sense, utterly shattered and ruined, but may by sheer determination and ingenuity contrive to make a living for himself; conversely, a claimant may be able to work, in both his and the doctor's opinion, but awareness of his injury may lead employers to refuse him employment. These two illustrations will expose at once the error that results from an uncompromising preoccupation with either the medical or the actual wage-loss aspect of disability. An absolute insistence on medical disability in the abstract would produce a denial of compensation in the latter case, although the wage loss is as real and as directly traceable to the injury as in any other instance.

2 Larson, The Law of Workmen's Compensation, section 57.11 (1987).

The Commission concluded that by 21 November 1984 plaintiff was "ready, willing and able to return to work for defendant-employer in her former capacity earning the same wage and was thus no longer incapacitated." Though plaintiff may have been "ready, willing and able to return to work," she was not able to work and earn any wage from this employer. For injury-related reasons her employer would not honor her request to return to work until June 1985. Furthermore, the record before us contains no evidence from which it can be determined whether any other employer would have hired plaintiff on 22 November 1984. *Hilliard* at 595, 290 S.E. 2d at 683. The record is clear that plaintiff's inability to work at American Transit during this time period is directly traceable to her knee injury. The injury and employer's refusal to allow claimant to return to work here is an excellent illustration of Professor Larson's example of situations where knowledge of an injury might lead employers to refuse claimants employment. Given the *Watkins* presumption that plaintiff's temporary total disability continues until she returns to work and our

holding that maximum medical improvement is not the equivalent of the end of claimant's disability, we vacate the award of the Industrial Commission and remand for further proceedings to determine the extent of plaintiff's disability, if any, on 22 November 1984. Additionally, we note that when the Commission reevaluates plaintiff's physical condition on 22 November 1984, it should consider whether or not defendants here are entitled to a credit for the lump sum payment made for permanent partial disability. *See* G.S. 97-42; *Moretz v. Richards & Associates*, 316 N.C. 539, 342 S.E. 2d 844 (1986).

The Commission further concluded that no substantial change had occurred since the award of permanent partial disability benefits and, therefore, plaintiff was barred from receiving additional compensation benefits. We note that this record fails to show an Industrial Commission Form 28(B) or any other document purporting to be a final award. Accordingly, a change of condition standard is not applicable here. *See Watkins* at 137, 181 S.E. 2d at 592.

Our holding here makes it unnecessary to address plaintiff's remaining assignment of error. For the foregoing reasons, we vacate and remand.

Vacate and remand.

Judges PARKER and SMITH concur.