The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie Dollar. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award filed August 30, 1995, and the Amended Opinion and Award filed September 12, 1995 and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at all relevant times.
2. Fireman's Fund Insurance Company was the carrier on the risk at the relevant time.
3. The plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on April 23, 1991.
4. As a result of the admittedly compensable injury, the parties entered into a Form 21 Agreement for Compensation, which was approved by the Industrial Commission on October 30, 1991. Pursuant to this Agreement, plaintiff received temporary total disability compensation from May 1, 1991, through May 1, 1992.
5. Plaintiff's average weekly wage was $567.91, which yielded a compensation rate of $378.63 per week.
6. A Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation, was approved by the Industrial Commission on May 19, 1992.
7. Plaintiff filed a Form 33, Request for Hearing, on June 10, 1992.
8. Defendants filed a Form 33R, Response to Request for Hearing, on June 18, 1992.
9. The parties agreed to stipulate documents as set forth in the Pre-Trial Agreement, which is incorporated herein by reference.
10. The issues for determination are:
 a. Whether the plaintiff is entitled to reinstatement of temporary total disability benefits from May 1, 1992, and continuing;
 b. Whether the plaintiff is entitled to permanent partial disability compensation;
 c. Whether the plaintiff is entitled to have defendants provide treatment by Dr. Richard W. Adams and Dr. Gary Poehling;
 d. Whether the plaintiff wrongfully refused to return to the employment offered by defendant;
 e. Whether plaintiff has reached maximum medical improvement.
11. On March 3, 1994, the parties filed a stipulation of additional records into evidence, which is incorporated herein by reference.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On April 23, 1991, the plaintiff was a thirty-four year old married male who had been employed for approximately ten years with defendant-employer which is a manufacturer of exterior hardboard siding. The plaintiff worked as a welder/maintenance man, which required heaving lifting, climbing, and working in a variety of positions in order to perform welding.
2. On April 23, 1991, while plaintiff was performing a welding job on the digester tower, he lost his balance while sitting on the handrail and fell backwards where he was suspended upside-down for a short period of time by his right foot and ankle which were trapped by the gate valve. The plaintiff struck his head and back on the catwalk, which was below the handrail, and his neck and shoulders came to rest on the catwalk.
3. Carl Darnell, the electrician assigned to work with plaintiff on this job, assisted plaintiff to free himself of the incident. At that time plaintiff experienced numbness in his legs and a burning sensation in his back.
4. The digester on which plaintiff was welding utilized steam to process the wood to be used in the manufacturing process.
5. The plaintiff was transported to Wilkes General Hospital, where he was x-rayed, and thereafter sent to North Carolina Baptist Hospital.
6. Upon admission at Baptist Hospital, the plaintiff came to be treated by neurosurgeon Dr. Charles L. Branch, Jr. Plaintiff related a history of prior back strains for which he had missed work, but no prior back surgeries or fractures. The plaintiff described the injury by accident to Dr. Branch as having occurred while sitting on the edge of scaffolding welding with his feet hooked underneath a rail. He stated that he scooted back and fell off the scaffolding, catching his feet. The plaintiff dangled backwards and struck the middle of his back around the lower thoracic and upper lumbar spine on the platform below. The plaintiff complained of severe back pain and decreased sensation in his legs.
7. While hospitalized, the plaintiff underwent an MRI, myelogram and CT scan, and rheumatology screen, all of which were negative for acute changes. The plaintiff was discharged on April 26, 1991, and instructed to use warm packs on his back, to engage in activity as tolerated, and was provided a back brace and vicodin, orudis, and valium for pain.
8. On May 29, 1991, the plaintiff was seen by Dr. Branch, at which time the plaintiff complained of pain. Dr. Branch ordered physical therapy and continued limited activity.
9. The plaintiff contacted Dr. Branch prior to his October 24, 1991, appointment, requesting a change of medication, and at the appointment was very demanding for stronger medication. Being of the opinion that plaintiff had probably reached maximum medical improvement, Dr. Branch released plaintiff from his care.
10. Dr. Branch notified Maria Plott, R.N., the rehabilitation nurse hired to plaintiff's case by the carrier, that plaintiff was probably at maximum medical improvement and that he would be happy to forward records to another doctor for review.
11. Dr. Branch noted on November 11, 1991, that plaintiff retains a ten percent permanent partial impairment to the spine as a result of the injury on April 23, 1991.
12. On November 15, 1991, Nurse Plott requested that Dr. Branch review a "Mechanic A rate" job, and on November 20, Dr. Branch advised that plaintiff would not be able to return to this job because of the moving or lifting of objects weighing up to fifty pounds.
13. On December 30, 1991, Nurse Plott requested that Dr. Branch review a "Wet End tester" job. On January 3, 1992, Dr. Branch advised that the wet end tester job was appropriate to plaintiff's capabilities.
14. The wet end tester job required the tester to obtain wood chip samples and carry out testing of those samples as to chemical flow rates, fiber quality check, PH check, and other preparation of samples. The tester would be required to walk approximately fifty to seventy-five yards to obtain samples at five stations in the plant each hour. Occasional climbing of steps or ladders would be necessary. In addition, the tester would have to lift ten to twenty pounds, when transferring samples or doing a quality check.
15. The wet end tester job was made available to the plaintiff upon his release by Dr. Branch in October of 1991, and remained available until plaintiff rejected it in April of 1992.
16. After plaintiff refused the wet end tester job, the defendants submitted a Form 24, which was approved on May 19, 1992.
17. The plaintiff was seen by Dr. Richard Adams, an orthopaedic surgeon, in Statesville on November 21, 1991, at which time Dr. Adams noted plaintiff to have complaints of tenderness in the mid-thoracic spine down the lumbar spine. Dr. Adams opined that plaintiff had a problem that was producing chronic pain and that plaintiff's condition could not be helped surgically in any manner. Dr. Adams further opined that based upon a consensus of opinions of other doctors as well as his own, plaintiff had a painful condition which should be managed with as much therapy as needed. In addition to therapy, Dr. Adams performed a number of injections and epidurals, and only the first epidural provided any minimal relief to plaintiff. Dr. Adams further found that due to plaintiff's condition as a result of his injury by accident, plaintiff is permanently disabled. Thereafter, Dr. Adams referred plaintiff to Dr. Gary Poehling.
18. Dr. Poehling first saw plaintiff in September 17, 1992, at which time plaintiff stated he had back pain off and on for six years. Upon examining plaintiff, the examination revealed that plaintiff was in severe pain. Even the slightest touch, particularly around his neck and back region, caused severe pain. Dr. Poehling diagnosed plaintiff with spinal contusion with resultant reflex sympathetic dystrophy. Dr. Poehling further opined that plaintiff is totally incapacitated and unable to work as a result of his on-the-job injury by accident.
19. The Full Commission finds that the treatment rendered by Dr. Adams and Dr. Poehling was medically necessary and reasonable for the treatment of plaintiff.
20. The Full Commission finds that based upon the medical evidence plaintiff's refusal to accept employment was justifiable and reasonable.
21. Further, the Full Commission gives greater weight to the testimony and diagnosis of Dr. Adams and Dr. Poehling than the testimony and diagnosis of Dr. Branch.
22. Further, the Full Commission finds that based upon the medical evidence submitted the plaintiff has not reached maximum medical improvement and finds plaintiff to be permanently and totally disabled.
23. Finally, following the hearing before the Deputy Commissioner, the plaintiff received thirty weeks of compensation benefits from May 20, 1993 through December 7, 1993.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On April 23, 1991 plaintiff sustained an admittedly compensable accident to his back arising out of and in the course of his employment with defendant and thus became disabled. Disability is presumed to continue until the employee returns to work at wages equal to those he was receiving at the time of his injury. N.C.G.S. § 97-2 (6), Watson v.Winston-Salem Transit Authority, 92 N.C. App. 473, 374 S.E.2d 483
(1988).
2. In addition to the temporary total disability compensation already paid, plaintiff is entitled to permanent and total disability compensation benefits at the rate of $378.63 per week from May 1, 1992 through the date of the hearing and continuing until further Order from the Commission. The plaintiff is entitled to receive a credit for the 30 weeks of compensation at a rate of $378.63 per week. N.C.G.S. § 97-29.
3. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his injury by accident for so long as such medical treatment is reasonably required to effect a cure, provide relief and/or would tend to lessen his disability. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for additional workers' compensation benefits arising from his injury by accident which occurred on April 23, 1991 is GRANTED.
2. In addition to the temporary total disability compensation already paid, plaintiff is entitled to permanent and total disability compensation benefits at the rate of $378.63 per week from May 1, 1992 through the date of the hearing and continuing until further Order from the Commission.
3. Plaintiff is entitled to payment by defendant of all medical expenses incurred or to be incurred as a result of his injury by accident for so long as such medical treatment is reasonably required to effect a cure, provide relief and/or would tend to lessen his disability.
4. A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel and thereafter, plaintiff's counsel shall receive every fourth check. Said attorney's fee shall be paid directly to plaintiff's counsel.
5. Defendants shall pay all costs including the fees of Dr. Richard W. Adams and Dr. Gary G. Poehling.
FOR THE FULL COMMISSION
 S/ ___________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 5/21/96