The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification as to the time when plaintiff's right to temporary total disability ended.
The Full Commission finds as a fact and concludes as a matter of law the following, which was entered into by the parties at the hearing as a
****************
STIPULATION
1. Defendants continued to pay compensation to plaintiff through the end of October 1994 and it was anticipated that compensation would continue until the Industrial Commission allowed defendants to terminate payment or plaintiff returned to work.
The parties submitted a pretrial agreement dated November 29, 1994 which is incorporated by reference. In addition, they stipulated into evidence the following:
 1. Seven pages of records and reports from Allen Gorrod.
 2. Ninety-eight pages of records and reports from R. A. Russell, Jr.
3. Resume of Richie Andrew Russell, Jr.
4. Resume of Allen C. Gorrod.
 5. Twenty-five pages of medical records and reports which were submitted after the hearing.
****************
Based upon all of the competent evidence adduced at the hearing, the undersigned makes the following additional
FINDINGS OF FACT
1. Plaintiff, a 47 year old high school graduate, began working for defendant employer in 1990 as a packer. Her job involved weighing and packing meat. As a result of repetitive lifting required by her work duties, she developed chronic lateral epicondylitis in her right elbow. Defendants admitted liability for benefits under the Worker's Compensation Act for this occupational disease and began paying compensation to her for temporary total disability beginning October 10, 1991.
2. By the time plaintiff first saw Dr. Sypher on April 1, 1992, she had received two steroid injections in her elbow which had provided only transient relief of her symptoms and which had caused some atrophy. He gave her a splint and instructed her to avoid lifting over 10 pounds. When she returned to him on May 8, she was still complaining of severe pain, so he recommended surgery, and on May 19, 1992 he operated on her right arm. He then followed her recovery and advised physical therapy and exercises. On August 18, 1992 he released her to return to work at light duty with no lifting of over 15 pounds, but her employer apparently did not have suitable work available. Dr. Sypher then ordered a functional capacity evaluation in which she failed 7 of 22 test trials, all with the affected arm, which could have meant symptom magnification on her part or a pain response.
3. Dr. Sypher released plaintiff on October 7, 1992 with a permanency rating and work restrictions. She was to work in a light or sedentary capacity with a 15 pound lifting restriction.
4. Plaintiff returned to Dr. Sypher in January 1993 appearing angry and claiming she could not use her arm at all due to pain. At her request Dr. Sypher referred her to Dr. Goldner for evaluation. Dr. Goldner examined her on February 16, 1993 and injected her elbow with numbing medication. She still complained of pain despite the injection, so he concluded that further surgery would not benefit her. Dr. Sypher had no further treatment to offer and recommended that she return to work, but he would not give a precise definition of her restrictions apparently because of her problematic nature.
5. On May 10, 1993 plaintiff was evaluated by Dr. Poehling who recommended that she try some different medication, but aside from that recommendation believed that she had reached maximum medical improvement. In his opinion she could perform light work without repetitive use of her right arm and with maximum lifting of 10 to 15 pounds on an occasional basis. He recommended that she use her right hand as an assisting hand.
6. Defendants hired American Rehabilitation, Inc. to provide vocational placement assistance to plaintiff, and Andy Russell was assigned to her case. He attempted to work with her on filling out employment applications, interviewing for jobs and making a good appearance. She was minimally cooperative at first and later refused to discuss those issues. They would meet at the Employment Security Commission office and look up available jobs. However, she would not ask the counselor there about many of the positions he thought might be appropriate. She would not follow the restrictions of her doctors but insisted on looking for employment which would essentially not involve any use of her right arm. This limitation greatly, and unnecessarily, restricted her potential employment options.
7. During the time plaintiff worked with Mr. Russell she missed many of their appointments, placed unreasonable restrictions on his efforts and would not pursue appropriate job leads. In February 1994 the case was transferred to Peggy Knight, another vocational counselor, who immediately attempted to contact plaintiff, both by phone and by mail, but with no response. It was June 6, 1994 before plaintiff would meet with her. However, plaintiff liked Ms. Knight better than Mr. Russell and subsequently became more cooperative. Nevertheless, she would still not pursue many jobs which were within her restrictions.
8. Plaintiff clearly demonstrated that she did not want or intend to return to work. To the extent that she testified to the contrary, her testimony was not credible. Although, she was capable of working within the restrictions given by Dr. Poehling and there were jobs available within those restrictions in her area, she essentially sabotaged defendants' efforts to place her in alternative employment and to establish her earning capacity. In any event, as of November 19, 1993 there was a security guard position available with Burns International which was within her restrictions and ability, which Dr. Goldner approved, but for which she refused to apply. As of that date, defendants established that she had earning capacity and that there was suitable employment which she could have obtained had she made an effort. Her failure to procure employment by that time was due to her unwillingness to go back to work.
9. Plaintiff reached maximum medical improvement with respect to this occupational disease by May 10, 1993. She sustained a 12.5% permanent partial disability to her right arm as a result of the occupational disease.
****************
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSIONS OF LAW
1. Plaintiff was entitled to compensation for temporary total disability to November 19, 1993. Watson v. Winston-Salem TransitAuthority, 92 N.C. App. 473 (1988); N.C. Gen. Stat. § 97-29.
2. Despite plaintiff's failure to actually procure alternative employment, defendants have proven that as of November 19, 1993 she had earning capacity and that she could have obtained suitable employment had she made reasonable efforts in that regard. Consequently, she would not be entitled to further compensation for actual loss of earning capacity after that time.Russell v. Lowe's Product Distribution, 108 N.C. App. 762 (1993).
3. Plaintiff is entitled to compensation at the rate of $160.00 per week for 30 weeks for the 12.5% percent permanent partial disability she sustained to the right arm as a result of the occupational disease. However, defendants have overpaid compensation to her and they are entitled to offset compensation paid after November 18, 1993 against the compensation owed for plaintiff's permanent partial disability to her right arm. This overpayment is an amount greater than the amount that plaintiff is entitled to receive for the permanent partial disability to her right arm. Consequently, no further compensation is due. G.S. § 97-31 (12).
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this occupational disease. G.S. § 97-2 (19); G.S. § 97-59.
****************
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
AWARD
1. Having overpaid compensation to plaintiff, defendants are not liable for further benefits. Rather, they are entitled to offset compensation paid after November 18, 1993 against the compensation owed for plaintiff's permanent partial disability to her right arm.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. Defendants shall pay the costs.
 S/ _________________________ DOUGLAS BERGER DEPUTY COMMISSIONER
CONCURRING:
S/ ___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
DEB:sm