The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach different facts and conclusion than those reached by the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The undersigned finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. The defendant was a duly qualified self-insured at all relevant times herein with Riscorp of NC as its servicing agent.
4. The parties stipulated that the plaintiff was injured by accident as previously determined in an Opinion and Award filed on May 20, 1997 by Deputy Commissioner William Haigh and that the Industrial Commission may take judicial notice of the prior proceedings and findings of fact therein.
5. The parties stipulated that the defendant paid all sums specifically ordered to be paid to the plaintiff as compensation under the prior Opinion and Award.
6. The parties stipulated that there are no questions of Statute of Limitations or timeliness or jurisdiction.
7. The parties stipulated to the plaintiff's medical records from Triangle Orthopaedic Associates, P.A., Durham Regional Hospital, American Rehabilitation, Inc., and Lincoln Community Health Center.
8. The issue presented is:
 a) Whether the plaintiff is entitled to further medical treatment as a direct and natural result of his prior compensable injury by accident of September of 1995?
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 38 year old unemployed laborer with a high school education and one year of education at Durham Technical College. Prior to working for defendant, plaintiff had been employed as an assistant to a physical therapist, as a certified nursing assistant and as a truck driver.
2. About 1990, plaintiff began working as a manual laborer for defendant, a recycling company, and remained employed with defendant until September 18, 1995.
3. On September 15, 1995, plaintiff worked as a warehouseman for defendant which included using a forklift to position wooden bins full of newspapers on a rack which was about six and one half feet high and, then manually pulling the newspapers out of the bins and putting them on a conveyor belt. The bins, which measured six foot by four foot by four foot, were constructed of two by fours or four by fours and ply-board. A bin full of dry newspapers weighed about 500 pounds, but a bin of wet papers weighed about 700 lbs. When it rained, the papers became wet and heavier. In addition, the wooden bins decayed from the moisture over a period of time. Prior to September 15, 1995, plaintiff had requested maintenance personnel to repair decayed bins, but he was told to continue using the decay bins until they could be repaired.
4. At about noon on Friday, September 15, 1995, as plaintiff was standing on a platform elevated over the conveyor belt which transported newspaper to a tractor trailer, he unlocked the door to a bin positioned on the rack and started pulling the newspapers out of it onto a slide or shute which fed onto the conveyor belt. While pulling the newspapers onto the belt, the wooden bin, which had four decayed wooden footings, started breaking apart and tipping over. Plaintiff unsuccessfully tried to hold the bin as the newspapers fell forward, but the weight shifted and the bin fell off the rack, struck him in the lower back, and knocked him down onto the conveyor belt. After striking the plaintiff, the bin turned over so that about one-half of the bin was on its side. The weight of the bin a long with some newspaper combined to pin the plaintiff between the bin and the conveyor belt thereby causing the belt to stop. Plaintiff then pushed some paper with his hands and the conveyor belt started moving again which allowed plaintiff to wiggle and slip out from under the bin.
5. After freeing himself from benefit the bin, plaintiff immediately felt the onset of low back pain. Shortly after the accident, Donald Quick, a co-employee, came to plaintiff's work area, as usual, to ask if plaintiff wanted something for lunch. Mr. Quick observed plaintiff holding his back; plaintiff told him that a bin had fallen on him and injured his back. Plaintiff asked Mr. Quick to get him some Tylenol when he went to the store. Mr. Quick got the Tylenol for plaintiff, picked up the newspapers, and observed the banged-up bin on the floor.
6. There is no evidence of record with regard to the height of the platform, the height of the conveyor belt underneath it, plaintiff's height, and consequently, the distance that the bin fell before hitting plaintiff's back and the distance plaintiff was knocked to the conveyor belt. In the absence of such evidence, it would be speculative to find that plaintiff should have had some bruises, swelling, or abrasions on his back following the accident.
7. Plaintiff sustained an injury by accident arising out of and in the course of his employment on September 15, 1995. His average weekly wage amounts to $400.00 with a compensation rate of $266.68
8. Plaintiff's back pain forced him to leave work early on September 15, 1995 after being unable to contact his supervisors Ed Williams, Steve Porter, and A.T.. Mr. Quick also unsuccessfully tried to notify those supervisors of the accident. Plaintiff thought that his back pain would get better over the weekend, but it did not.
9. Upon arriving at work Monday, September 18, 1995, plaintiff went to Ed Williams and reported that on Friday, a bin had fallen and hit him in the back and injured his back, and that he needed medical treatment. At about 9:00 a.m., plaintiff, Porter, Williams, and Carolyn Kelly, an employee of defendant's personnel department, met and terminated plaintiff because of inaccurate time cards. Plaintiff was unaware that defendant had previously planned to fire him on Monday, September 18, 1995 because he had turned in inaccurate time cards. In this regard, plaintiff had difficulty in the past completing time cards properly and at times, received the assistance of his supervisor in completing them.
10. On September 19, 1995 plaintiff was examined and evaluated by a physician's assistant associated with Dr. Jacobi. On examination, plaintiff had tenderness in the lower back, pain with motion of the back, and he moved slowly and cautiously. There was no reported finding of any bruises, abrasions, or swelling. Medications were prescribed for his low back pain. Plaintiff thereafter was seen by a physician's assistant on September 25, 1995 at which time he was continued on medications and physical therapy was prescribed. On October 19, plaintiff was examined and evaluated by Dr. Jacobi at which time his medication was changed and he was continued on physical therapy for treatment of muscle strain of the mid-thoracic and lumbar spines.
11. On October 25, 1995, plaintiff was examined at the emergency room of Durham Regional Hospital and was treated with medications for neck and back pain. He was next and last examined by Dr. Jacobi on December 4, 1995 at which time plaintiff continued to have limited range of motion of his back, tightness in the muscles in his low back and back pain. Although physical improved plaintiff's low back pain, that treatment was discontinued because defendant did not authorize further treatment and plaintiff could not afford to pay for the treatment.
12. Plaintiff was thereafter examined, evaluated, and treated with medications at the Lincoln Community Health Center on February 5, 1996 and again on March 18, 1996 for his back condition. By March 18, 1996 plaintiff reported marked improvement of his symptoms while on medications and stated that he was beginning to look for new employment. On examination, there was marked decreased low back pain, marked improvement in range of motion in the back and no spasm or tenderness. Dr. Melton, the treating physician, discussed with plaintiff a medical clearance form to allow him to return to employment.
13. In about May or June 1996, plaintiff worked a couple of weeks for a book distribution company filling order which included placing books into boxes and lifting the boxes which weighed about 40-50 lbs. He quit that job as a result of numbness in his leg and back pain after standing about 1-1 1/2 hours. In August 1996, plaintiff operated a Bobcat front end loader and watched a machine. Plaintiff quit that job after about 2-3 weeks because the bumpy ride on the Bobcat caused his back to hurt. As of the August 20, 1996 hearing of this case before Deputy Commissioner Haigh, plaintiff continued to experience some degree of pain in his back.
14. The plaintiff-employee also worked at Chatham Steel briefly, where his job duties included intermittent heavy lifting. Again, although the plaintiff testified that he did not injure his back at this job, he voluntarily resigned due to back pain.
15. On August 18, 1997, the plaintiff was employed by the City of Durham on a street maintenance crew that repaired pot holes in city streets. The plaintiff job duties included shoveling asphalt and lifting 35 to 40 pounds regularly. On November 14, 1997, the defendant-employer released the plaintiff because there was no work available.
16. The parties agreed that the plaintiff-employee would present to Dr. William J. Mallon, an orthopaedic surgeon, in June of 1997. Dr. Mallon recommended an MRI. After the MRI was performed, the plaintiff-employee returned to Dr. Mallon on July 15, 1997. The MRI revealed a small to moderate central herniated nucleus pulposus at L5-S1 and degeneration at L4-5 and L5-S1. Unsure as to whether or not surgery would relieve the plaintiff's pain, Dr. Mallon recommended epidural injections.
17. Dr. Mallon gave an opinion that the plaintiff-employee's September of 1995 compensable injury by accident was a significant contributing factor to the plaintiff-employee's condition in June and July of 1997. Dr. Mallon further gave an opinion that the plaintiff probably had significant back pain in March of 1996 when he was released to return to work, but that the plaintiff is a "laborer" and "like most people, he had bills to pay" and that the plaintiff "tried to work through all this, and then he got to a point where he just couldn't." Dr. Mallon gave an opinion that the plaintiff's condition of back pain in June and July of 1997 came from his fall in September of 1995 and that although it was possible that some intervening trauma of lifting could have caused the plaintiff's current problem, he had no evidence of such a trauma.
18. Dr. Mallon opined that the plaintiff-employee has not reached maximum medical improvement. Dr. Mallon further gave an opinion that he could not project a return to work date for the plaintiff until the plaintiff tried the treatments recommended.
19. Plaintiff's present condition of lower back and leg pain for which he seeks medical treatment is causally and directly related to the plaintiff-employee's September of 1995 compensable injury by accident.
20. The plaintiff-employee has met his burden of proof with respect to diminished wage earning incapacity and accordingly he is entitled to temporary total disability benefits.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the plaintiff's compensable injury by accident to his back in September of 1995 and the plaintiff's resulting and continuing lower back and leg pain, which are a direct result of that compensable accident, the plaintiff is entitled to have defendant pay for all of his medical treatment from Dr. William J. Mallon. N.C. GEN. STAT. § 97-25.
2. The plaintiff is entitled to have defendant pay for all of the his medical expenses incurred or to be incurred from Dr. Mallon including prior treatment from Dr. Mallon beginning June of 1997 as a result of the plaintiff's continuing lower back and leg pain due to his compensable injury by accident of September of 1995 for so long as such examinations, evaluations and treatments may reasonably be requested to effect a cure, or give relief and will tend to lessen the plaintiff's disability. N.C. GEN. STAT. §§ 97-2(19), 97-25.
3. The plaintiff has met his burden of showing that he continues to be disabled and incapable of earning his pre-injury wages due to his compensable injury by accident of September 15, 1995. Watson v. Winston-Salem Transit Authority,92 N.C. App. 473, 374 S.E.2d 483 (1988).
4. The plaintiff is entitled to temporary total disability compensation from November 14, 1997 and continuing until further order of the North Carolina Industrial Commission. N.C. GEN. STAT. § 97-29.
5. Defendant is entitled to a credit for any wages that plaintiff earned from September 18, 1995 to the present. N.C. GEN. STAT. § 97-42.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability, plaintiff is entitled to temporary total disability compensation at the rate of $266.68 per week from September 18, 1995 to March 18, 1996 to the date of the hearing and continuing until further order of the Industrial Commission. Such compensation as has accrued shall be paid in a lump sum subject to an attorney's fee hereinafter approved subject to a credit for defendant for any wages plaintiff earned after September 18, 1995.
2. As the plaintiff has not yet reached maximum medical improvement from the treatment for his lower back, this Opinion and Award does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment to the plaintiff's lower back which may be due, either party may request a hearing from the Commission to resolve this issue.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be deducted from the sum due plaintiff and paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph one of this Award shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth compensation check.
4. The defendants shall pay the costs.
***********
This the ___ day of June 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
LKM/jth