The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon much detailed reconsideration of the evidence as a whole, the undersigned reach their own facts and conclusions, thereby making several modifications to those reached by Deputy Commissioner Bost. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate Award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing, and in a pre-trial agreement, as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed at all times relevant hereto. At all relevant times, defendant-employer regularly employed three or more employees.
3. Defendant-employer is a qualified self-insured.
4. The employer-employee relationship existed between the employee and employer on or about May 18, 1995. The plaintiff, a seasonal employee, sustained a compensable injury on May 18, 1995.
5. A Form 21 Agreement was executed and approved by the Industrial Commission, under the terms of which plaintiff has been paid compensation for temporary total disability from May 19, 1995 to October 26, 1995, and thereafter from May 17, 1996, through the date of the initial hearing, at a weekly compensation rate of $183.54.
6. Plaintiff returned to work at a light duty position with defendant-employer on October 26, 1995, and continuing until May 17, 1996, at which time plaintiff's light duty position terminated. As of the date of the initial hearing, no further light duty position had become available for defendant-employer to offer the plaintiff.
***********
Based upon all of the competent, credible, and convincing evidence adduced in this case and reasonable inferences drawn therefrom, the undersigned make the following additional
 FINDINGS OF FACT
1. Plaintiff was at all times a seasonal employee with the City of Winston-Salem, working from the spring of each year until no later than August 31st. For the remainder of each year, during which plaintiff's job with defendant was non-existent, neither plaintiff nor defendant gave evidence as to plaintiff's work activities, if any, during the off season.
2. On May 18, 1995, plaintiff sustained a compensable injury to his left foot while working in his seasonable status and was out of work completely on temporary total disability until October 26, 1995, at which time he returned to work full-time at a light duty position with defendant within his restrictions.
3. Plaintiff's light duty position with defendant terminated on May 17, 1996, at which time defendant resumed payment of temporary total disability benefits to the date of the initial hearing under protest. There were no positions available with the defendant within plaintiff's restrictions. Further, no new light duty position with defendant-employer had become available for plaintiff as of the date of the initial hearing.
4. Defendant sought by Form 24 Petition to terminate temporary total disability benefits to the plaintiff, which was filed on or about May 21, 1996. By previous Form 24 hearing, the petition to terminate temporary total benefits was denied.
5. Beginning in May of 1996, defendant assigned a case worker, Mr. Lew Drumm, a vocational rehabilitation specialist with CorVel Corporation in Charlotte, N.C., for the purpose of helping plaintiff locate suitable employment within his work restrictions. Thereafter, biweekly meetings were held between plaintiff and Mr. Drumm at which plaintiff was given assignments including contacts with prospective employers which were to be completed within a two week period of time, by the next meeting. These meetings took place on several occasions, primarily in plaintiff's home, and there were discussions on how to proceed in looking for other employment.
6. Lew Drumm admitted that there was continuing friction between himself and the plaintiff. This personality conflict obviously colored each person's opinion of the other and affected their interactions. However, based upon the competent, credible, and convincing evidence of record, the undersigned find that plaintiff made a good faith effort to comply with Lew Drumm's requests regarding job searches. Lew Drumm's only competent evidence of plaintiff's failure to cooperate consisted of job log sheets which did not meet the standards Mr. Drumm set. This is not accepted as credible or convincing, however, in light of the evidence presented as a whole, including plaintiff's testimony.
7. Plaintiff made efforts to seek suitable employment by riding with Mr. Drumm to employer locations to put in applications. On at least one occasion that Mr. Drumm took plaintiff to a location, he left plaintiff there, requiring plaintiff to seek alternative means to get back home.
8. In addition to obtaining rides with Mr. Drumm, plaintiff also obtained other transportation to seek jobs. Such transportation included his mother, with whom plaintiff lives.
9. Plaintiff reapplied for a job with the defendant, City of Winston-Salem, Hanes, RJR Nabisco, AMP, and Linebacker, as well as hospitals in Forsyth County and the Employment Security Commission. This list is not totally inclusive, as there were numerous applications made.
10. Plaintiff would also review newspapers to seek potential employers.
11. All information and feedback that plaintiff received was that either no jobs were available or that no jobs were available within his work restrictions.
12. While plaintiff has, at times, had conflicts and has not done every task requested by Mr. Drumm, he has not sabotaged his job search efforts and has reasonably met the requirements to seek employment and to marginally cooperate with defendant's efforts to locate employment for him.
************
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. Generally, "average weekly wage" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of injury. However, where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wage may be resorted to as would most nearly approximate the amount the injured employee would be earning were it not for the injury. N.C. Gen. Stat. Section 97-2(5). In this case, the undersigned find that a computation based upon the months worked instead of 12 preceding months, would be most equitable. More importantly, this is the calculation which was set forth in the Form 21 Agreement which was executed by the parties and previously approved by the Commission.
2. Since there is no basis to set aside the Form 21 Agreement in this case, it shall remain in full force and effect N.C. Gen. Stat. Section 97-17. Plaintiff's presumption of continuing disability continues until such time as plaintiff returns to his pre-injury wage. Silver v. Robert Welding Contractors,117 N.C. App. 707, 710, 553 S.E.2d 216 (1995). Because the plaintiff has permanent work restrictions due to his compensable injury, the presumption of disability applies as long as plaintiff is out of work. Watson v. Winston-Salem TransitAuthority, 92 N.C. App. 473,374 S.E.2d 483 (1988).
3. Plaintiff's compensation rate in the Form 21 is $183.54. As a result of his compensable injury by accident, he is entitled to compensation at the rate of $183.54 per week for his continuing disability, said payment to continue until further order of the Industrial Commission. N.C. Gen. Stat. Section 97-29.
4. The plaintiff has shown reasonable efforts to obtain work within his restrictions, with no success to the date of the initial hearing. Plaintiff has marginally cooperated with rehabilitation efforts by defendant such that a suspension of benefits for failure to cooperate is not warranted at this time. N.C. Gen. Stat. Section 97-25. However, plaintiff is strongly cautioned to cooperate with any further rehabilitation efforts of defendant-employer in order to avoid future Form 24 applications or periods of suspension.
5. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief, or lessen his period of disability. N.C. Gen. Stat. Section 97-25.
The foregoing findings of fact and conclusions of law engender the following
 AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $183.54 per week and continuing until further order of the Commission. Any unpaid compensation which has accrued shall be paid in a lump sum, subject to the attorney's fee hereinafter approved.
2. Plaintiff shall fully cooperate with further reasonable rehabilitation efforts which may be provided by defendant-employer.
3. Defendant shall pay all related expenses for medical treatment incurred by plaintiff as a result of his compensable injury by accident.
4. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25 percent of all accrued indemnity compensation due plaintiff. Thereafter, every fourth check shall be forwarded to plaintiff's counsel as reasonable payment for valuable services rendered.
5. Defendant shall pay the costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the ___ day of ___________, 1999.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
(Participated in the panel but unavailable for signature due to current illness)
______________________________ CHRISTOPHER SCOTT COMMISSIONER
JHB:kws