The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Holmes and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner with some modification.
***********
The Full Commission finds as fact and concludes as matters of law the following:
 STIPULATIONS
1. The date of the accident, which is the subject of this claim, is 14 July 1992.
2. On 14 July 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employer-employee relationship existed between the employee-plaintiff and the employer-defendant at the time of the accident.
4. The employer-defendant employed three or more employees.
5. The employer-defendant is self-insured and Gallagher Bassett Services is the servicing agent for the employer.
***********
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was forty years old at the time of the hearing. He is married with one child, and completed two years of community college. At the time of his compensable injury, he was employed as the manager of a Firestone Store.
2. This matter has been the subject of a prior hearing, dated 27 July 1993, before former Deputy Commissioner Lawrence B. Shuping, Jr. Deputy Commissioner Shuping found that defendants had defended the claim without reasonable grounds, and that they were guilty of stubborn, unfounded litigiousness (Finding of Fact 11). Deputy Commissioner Shuping determined that plaintiff was and remained totally disabled (Conclusion of Law 2).
3. Following this time, plaintiff was seen and treated by different doctors at the direction of the defendants.
4. Plaintiff engaged in vocational rehabilitation.
5. Defendants filed a Form 24 on 8 December 1995, seeking the suspension of plaintiff's compensation on the ground that "the employee and his attorney have unreasonably interfered with and obstructed reasonable efforts at vocational placement." Plaintiff countered with a Motion to Terminate Rehab and to Transfer Medical Care dated 28 December 1995.
6. All three matters were heard by Special Deputy Commissioner (now Deputy Commissioner) Amy L. Pfeiffer. On 19 January 1996, Special Deputy Commissioner Pfeiffer denied defendants' Form 24, approved an Independent Medical Examination by Dr. Wilkins, and ordered that defendants replace their vocational rehabilitation professional. (See Administrative Decision and Order of January 19, 1996).
7. Plaintiff treated with Dr. Henry Elsner following a course of treatment with a chiropractor. Additionally, he went through a work hardening and rehabilitation program on two different occasions, first in November 1992, and later in June 1993. Plaintiff's November 1994, Functional Capacities Evaluation suggested that he could work at the sedentary level.
8. Beginning in December 1994, plaintiff began to have increased pain in his upper back. Following facet injections and a MRI, he was referred to Dr. Charles Branch. Dr. Branch performed a cervical fusion at C5-C6. The fusion gave plaintiff some relief, however, he continued to experience difficulty with his right upper extremity. Dr. Elsner believes the fusion to be stable and thus no further surgical intervention is anticipated.
9. Plaintiff returned to Dr. Elsner and was referred to Dr. Massey at Duke. Dr. Massey suggested that plaintiff undergo an extensive multidisciplinary evaluation by his colleague, Dr. Wilkins. Although defendants sent plaintiff to Duke, they did not follow through with Dr. Massey's recommendation of Dr. Wilkins thorough independent medical examination. Dr. Wilkins' proposed examination was the subject of the 19 January 1996, Administrative Decision and Order.
10. Medical evidence was taken via records as well as by the testimony of Drs. Elsner, Brian A. Farah, and David Goode.
11. Dr. Elsner referred plaintiff to a psychiatrist for treatment of his chronic pain and depression. Dr. Elsner requested that the defendants approve psychiatric treatment for plaintiff. As a result of Dr. Elsner's recommendation, plaintiff went to Dr. Brian A. Farah for treatment. Plaintiff continued under Dr. Farah's care through the date of the hearing. Dr. Elsner testified that at the present time plaintiff is at maximum medical improvement and carries a twenty percent permanent partial disability to his back. At the present time, plaintiff could physically work in an environment that did not require greater than 15 pounds lifting on an occasional basis. He should not stoop or bend. He should not stand or sit for more than two hours at a time.
12. Dr. Farah testified that plaintiff gave him a history of an on-the-job injury and said that he had not worked since 1992. Plaintiff complained of chronic pain, insomnia, fatigue and irritability. Dr. Farah initially diagnosed plaintiff as having an adjustment disorder. An adjustment disorder implies that the psychiatric pathology is the result of some stressor, and as they are adjusting to it, that disorder manifests itself. Dr. Farah has found that chronic pain over an extended period of time coupled with lack of employment very typically results in depression. Dr. Farah opined that plaintiff suffers from chronic pain syndrome, that he also suffers from major depression, and that the former is the cause of the latter.
13. While Dr. Farah held out hope that plaintiff could return to work at some point, he did not believe plaintiff was psychiatrically ready for that at this juncture. Dr. Farah recommends that plaintiff undergo a comprehensive course of treatment and evaluation from a multidisciplinary perspective.
14. Pursuant to Special Deputy Commissioner Pfeiffer's Order, defendants removed plaintiff's vocational rehabilitation professional from the case. She was replaced by Carol Flynn, who testified by deposition on 14 April 1998.
15. Ms. Flynn prepared labor market surveys in October 1996, and again in October 1997. At the time of her first labor market survey she found no jobs in the local labor market that would have been appropriate for plaintiff. The second labor market survey focused on real estate jobs.
16. Ms. Flynn did concede that although she was confident that real estate positions were available in the Greensboro area, she had no knowledge as to how many, if any, would make the necessary accommodations for plaintiff.
17. Plaintiff cooperated with his new vocational rehabilitation counselor and sent out numerous resumes without success.
18. There is evidence of only one job being offered to plaintiff prior to the date of the hearing. This was a life insurance sales job offered to him by the International Order of Foresters. This job was one of the ones coordinated by the prior vocational rehabilitation professional. This job paid no salary, but a successful licensed salesperson could earn $35,000 annually on commissions. Plaintiff does not have a license to sell life insurance.
19. Defendants hired two different investigators who documented some of plaintiff's movements over several years. The private investigators edited their surveillance footage to produce two videotapes. These videotapes do not show plaintiff engaging in employment-type activity.
20. Defendants delivered the tapes to Dr. Elsner who testified "in balance, when I looked at them all, I was, shall I say, underwhelmed with them showing him unusually straining himself doing things . . ." Defendants did not offer the videotape to Dr. Farah. Defense counsel did ask Dr. Farah a series of hypothetical questions loosely based on these surveillance materials, to which Dr. Farah responded with hypothetical answers. As Dr. Farah pointed out, he had not seen either the actual events or the tapes, yet he did "know that many of my chronic pain patients have highly variable days, day to day, and some days are good days and some days are bad days. I know that their activity level varies tremendously."
21. Dr. Farah found no evidence of malingering in plaintiff. Dr. Farah recommends that plaintiff undergo a course of treatment at the High Point Pain Clinic. Dr. Elsner concurred that such a course of treatment would be appropriate.
22. Defendants arranged for a psychological independent medical examination following the hearing. They selected Dr. David J. Goode to perform same, and this was completed on 30 June 1998. Dr. Goode concurred with Dr. Farah's diagnosis, finding plaintiff to be suffering from a moderately severe depression stemming from the 1992 accident.
***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 CONCLUSIONS OF LAW
1. Having met his initial burden of proving his disability, plaintiff is entitled to the rebuttable presumption of continued total disability. N.C. Gen. Stat. § 97-2(9); Watson v.Winston-Salem Transit Authority, 92 N.C. App. 473,374 S.E.2d 483 (1988). Defendants have failed to produce evidence to rebut this presumption. Id; Brown v. S N Communications,Inc., 124 N.C. App. 320, 477 S.E.2d 197 (1996). Therefore, plaintiff is entitled to ongoing weekly total disability benefits in accordance with the 30 December 1995 Opinion and Award.Id; N.C. Gen. Stat. § 97-29.
2. The psychiatric treatment rendered to plaintiff by Dr. Farah is reasonably required to effect a cure, give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing, the Full Commission makes the following:
 AWARD
1. All aspects of the Award portion of the 30 December 1993 Opinion and Award shall remain in effect.
2. Defendants shall provide psychiatric care for plaintiff until such time the authorized treating psychiatrist no longer believes said treatment to be necessary or until further order of the Industrial Commission.
3. Defendants shall comply with the 19 January 1996 Order of the Industrial Commission and shall reimburse plaintiff for future mileage expenses incurred during vocational rehabilitation.
4. Plaintiff shall cooperate with any reasonable requests of vocational rehabilitation counselors provided by the defendants.
5. Defendants shall pay the costs, including an expert witness fee in the amount of $250.00 to Dr. David J. Goode, $250.00 to Dr. Andy Farah, and $200.00 to Carol Flynn.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ LAURA K. MAVRETIC COMMISSIONER