The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the holding of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and subsequent to the hearing on 24 June 1999 and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject and bound by the provisions of the North Carolina Workers Compensation Act.
2. On 6 August 1991, an employment relationship existed between plaintiff-employee and defendant-employer.
3. On 6 August 1991, plaintiff sustained a compensable injury arising out of and in the course of her employment with defendant-employer.
4. Plaintiffs average weekly wage on 6 August 1991 was $298.40, yielding a compensation rate of $198.94 per week.
5. The PMA Group was the carrier on risk on 6 August 1991.
6. Plaintiffs medicals regarding this claim are admitted into evidence as Stipulated Exhibit #2.
7. Plaintiffs rehabilitation records from Bernard Moore are admitted into evidence as Stipulated Exhibit #2.
8. Videotape is admitted into evidence as Stipulated Exhibit #4.
9. Plaintiffs discovery responses are admitted into evidence as Stipulated Exhibit #5.
10. Plaintiffs employment records from St. Andrews Presbyterian College are admitted into evidence as Stipulated Exhibit #6.
11. The Full Commission takes Judicial Notice of the Consent Order entered into between the parties and filed with the Commission 8 January 1999 before Deputy Commissioner George Glenn.
12. Defendants filed a Form 33 requesting plaintiff to make an election for permanent partial disability benefits pursuant to G.S. 97-30 and G.S. 97-31. The parties stipulate that defendants offered to pay the seventy-five percent (75%) rating to the leg and that plaintiff declined at that time to make an election. Additionally both sides request attorneys fees pursuant to G.S. 97-88.1.
***********
 RULINGS ON EVIDENTIARY MATTERS
The objections contained within the deposition of Dr. Glenn Perry ruled upon in accordance with the applicable provisions of the law and the opinion and award in this case.
***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 6 August 1991, plaintiff was a 24-year old female employed by defendant as a knitting machine operator. On that date, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she received an electrical shock from a machine she was working on. The shock caused plaintiff to fall to the ground, resulting in serious injury to her left knee.
2. Subsequent to this injury, the parties entered into an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission 4 September 1991.
3. Following her injury by accident, plaintiff was treated by Dr. Ward Oakley, who performed several surgical procedures attempting to repair her left knee. In 1995, plaintiff came under the care of Dr. Glenn Perry. Plaintiff then began aggressive physical therapy, which improved her condition to the extent she could walk up to two miles per day with a knee brace.
4. Defendants then began rehabilitation efforts approved by Dr. Perry. Defendants, through a rehabilitation professional, encouraged and assisted plaintiff in obtaining a GED on 1 May 1996. Thereafter, plaintiff took courses at a community college and defendants paid for a computer course for plaintiff.
5. In June 1997, Mr. Bernard Moore, the rehabilitation professional assigned to plaintiff, identified a jewelry repair job at Barbee Jewelers. Plaintiff, who was a long time customer of Barbee Jewelers and who knew Mr. James Barbee on a personal basis, met with him on 16 July 1997 to discuss the position, which would require her to travel between his jewelry stores. Mr. Barbee was prepared to send whomever he hired to jewelry repair school and inquired of plaintiff as to whether she would be interested in remaining in the jewelry business for at least 2 to 3 years. Mr. Barbee was concerned that he receive a reasonable return on the investment he was prepared to make regarding the training of a potential employee. Plaintiff was honest with Mr. Barbee and informed him that she was pursuing her nursing degree and that if she obtained it that she did not desire to remain in the jewelry business. Despite these potential conflicts, plaintiff was offered this position.
6. Notwithstanding his notes regarding plaintiffs physical restrictions and the Jewelers job, Dr. Perry opined that subjectively, plaintiff may not be able to work in this or other positions because of her pain. Plaintiff was in fact concerned with the possible harmful physical effects of having to travel to and from different stores in order to perform this job. ((See Transcript, Page 42, Lines 4-8) Question by Mr. Poisson-So, objectively she might be able to work; subjectively, she might not be able to work. And pain seems to be the pain and veracity are the two ingredients. — Answer by Dr. Perry — "Yes, sir.))
7. Because of the likelihood of increased pain and the ongoing possibility of buckling or hyperextending her knee, the jewelers job was not suitable for plaintiff and her refusal of it was justified.
8. On 18 February 1998, plaintiff became employed with St. Andrews Presbyterian College as an academic aide earning $5.00 per hour. Plaintiff only averaged approximately twelve (12) hours per week, yet had to drive forty (40) miles roundtrip for this job.
9. Plaintiff worked as an academic aide until the end of the spring semester on 15 May 1998. During the period of her employment with St. Andrews, plaintiff was absent for more than the maximum days allowed despite having worked only a few months. These absences were due to recurring pain and the overall condition of her knee. In fact, during the period she attempted to work for St. Andrews, plaintiff experienced multiple flare-ups of her knee condition when it had hyper extended. For the foregoing reasons, plaintiff sought other employment and declined St. Andrews offer of ongoing employment.
10. Notwithstanding his notes that the job at St. Andrews was within plaintiffs physical restrictions, Dr. Perry opined that subjectively plaintiff may not be able to work in this position because of her condition and pain. (See Transcript, Page 42, Lines 4-8)
11. The low wage job at St. Andrews, which required extensive travel for minimal hours, and which did in fact cause increased pain, was not suitable employment and plaintiff was justified in declining to accept it on a continuing basis.
12. In her continuing effort to locate suitable employment on her own, plaintiff began working with the Scotland County EMS Dispatcher on 4 August 1998. During the period of her employment in this capacity, plaintiff experienced a major hyperextension of her knee in late October 1998. Plaintiff continued to have problems with her knee and experienced another severe hyperextension two or three days prior to 15 November 1998, when she was not longer able to continue working in this capacity. These hyperextensions were the direct and proximate result of the 6 August 1991 injury to plaintiffs knee.
13. Due to these hyperextension episodes and her overall knee condition, plaintiff had missed the maximum number of days allowed by the Scotland County EMS. Faced with the reality of her condition and the possibility of being fired, plaintiff requested a move to part-time status on 16 November 1998, but was never recalled to work.
14. Subsequently, plaintiff again secured employment on her own as a part-time dispatcher with the Richmond County EMS in December 1998. However, plaintiff does not have guaranteed hours and had not worked for Richmond County EMS since 26 February 1999.
15. At no point since her employment with defendant-employer ended have defendants offered plaintiff suitable employment. Primarily on her own, however, she has made a reasonable effort to locate suitable jobs, but has not been successful to date.
16. On 7 May 1999, plaintiff completed the pre-nursing program at Richmond Community College. She was accepted into an Associate Degree Nursing program at Richmond Community College, scheduled to begin September 1999. Following the completion of her education, plaintiff desires to seek employment in the hospice field. Plaintiff has not undertaken any job search activities since leaving her position with Richmond County EMS. Plaintiffs main objective has been to obtain the education necessary for a career in the nursing field.
17. On 28 May 1998 plaintiff had reached maximum medical improvement and Dr. Perry assessed her with a seventy-five percent (75%) permanent partial impairment rating to her left leg. Following the assessment of this rating, defendants attempted to compensate plaintiff for this permanent partial disability, pursuant through an Industrial Commission Form 26 Supplemental Agreement for Compensation. This Form 26 has not been submitted to, and consequently has not been approved by the Commission.
18. Since February 1998, when plaintiff first returned to work, plaintiff has received no further indemnity benefits. Although plaintiff has earned less than her average weekly wage in at least one of her jobs, it has been longer than 300 weeks since the date of her injury.
19. The Court of Appeals specifically held in Brown v. S NCommunications, Inc., 124 N.C. App. 320, 477 S.E.2d 197 (1996), that a finding that the employee has reached maximum medical improvement does not rebut this presumption as this finding "is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury. Therefore, even though plaintiff reached maximum medical improvement on 28 May 1998, the burden of proof remained with defendants to produce sufficient evidence to rebut the presumption of continued disability.
20. A plaintiff who may be entitled to benefits under G.S. 97-29 or G.S. 97-30 as well as to benefits under G.S. 97-31, is entitled to select the more favorable remedy. On 28 May 1998 plaintiff reached maximum medical improvement and was assigned a seventy-five (75%) permanent partial disability rating to her left leg. Notwithstanding this rating, under the presumption of continued disability, plaintiff continued to be totally disabled as of that date. Given the obvious unfairness of merely awarding plaintiff, who continued to be totally disabled, permanent partial disability compensation under G.S. 97-31, the more favorable remedy under the facts of this case would be the award of total disability benefits under G.S. 97-29.
21. As the result of her 6 August 1991 injury by accident, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other employment for the period of 15 November 1998 through the present and continuing.
22. The pursuit of this matter by both parties was reasonable and was not based upon unfounded litigiousness.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 16 August 1991. G.S. 97-2(6).
2. Having met her initial burden of proving her disability through the Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission 4 September 1991, plaintiff is entitled to the rebuttable presumption of continuing disability. Kisiah v. W.R. KisiahPlumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. rev. denied,345 N.C. 343, 483 S.E.2d 169 (1997); Watson v. Winston Salem TransitAuthority, 92 N.C. App. 473, 374 S.E.2d 483 (1988); G.S. 97-29. Because plaintiffs inability to earn wages in her former position with defendant-employer or in any other position continued subsequent to 28 May 1998, her disability on that date was total and the presumption to which he was entitled to was a presumption of continued total disability. Id.
3. Plaintiff was justified in refusing the jewelry repair job offered to her in July 1997 as it was unsuitable and defendants have failed to otherwise rebut the presumption of ongoing total disability. Id.; G.S.97-32. Furthermore, the fact that plaintiff has reached maximum medical improvement does not rebut this presumption or relieve defendants of their burden. Brown v. S N Communications, Inc., 124 N.C. App. 320,477 S.E.2d 197 (1996).
4. If supported by the facts of the case, plaintiff is entitled to select the more favorable remedy between receiving benefits under G.S.97-31, G.S. 97-30 or under G.S. 97-29; Gupton v. Builders Transport,320 N.C. 38, 357 S.E.2d 674 (1987). Given the obvious unfairness of merely awarding plaintiff, who is totally disabled, permanent partial disability compensation under G.S. 97-31, the more favorable remedy justified under the facts of this case would be the award of benefits under G.S. 97-29. Id.
5. As the result of her 6 August 1991 injury by accident and presumption of continued total disability, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $198.94 per week for the period of 15 November 1998 through the present and continuing until such time as she returns to work or until further order of the Commission, but subject to a credit in defendants favor for the minimal wages she was able to earn from 18 February 1998 through 26 February 1999. G.S. 97-29; G.S. 97-42.
6. As the result of her 6 August 1991 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred. G.S. 97-25; Hyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993).
7. As this matter was pursued by all parties upon reasonable grounds, neither plaintiff nor defendants are entitled to an award of attorneys fees as a sanction. G.S. 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the compensation rate of $198.94 per week for the period of 15 November 1998 through the present and continuing until such time as she returns to work or until further order of the Commission, but subject to a credit in defendants favor for the minimal wages she was able to earn from 18 February 1998 through 26 February 1999. Subsequent to the credit being calculated and accounted for, from the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her 6 August 1991 injury by accident.
3. A reasonable attorneys fee of twenty-five percent of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER