***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On December 1, 1999, plaintiff sustained an injury by accident when he strained his right knee during the course of his employment.
2. At the time of the injury which is the subject of this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At all times relevant to this claim, the employer-employee relationship existed between plaintiff and defendant-employer.
4. ACE USA Services is the carrier on the risk.
5. Plaintiff's workers' compensation rate on the date of his injury was $560.00.
6. Industrial Commission Form 21, dated February 29, 2000, marked as "Plaintiff's Exhibit 1", is admitted into evidence as a document filed with the Commission on the date reflected by the Commission's date stamp on the original form contained in the Commission's file. This form is admitted into evidence for the purpose of showing it was filed with the Commission and not as evidence of the matter stated therein.
7. Industrial Commission Form 28, dated March 9, 2000, marked as "Plaintiff's Exhibit 2," is admitted into evidence as a document filed with the Commission on the date reflected by the Commission's date stamp on the original form contained in the Commission's file. This form is admitted into evidence for the purpose of showing it was filed with the Commission and not as evidence of the matter stated therein.
8. Industrial Commission Form 28, dated January 10, 2002, marked as "Plaintiff's Exhibit 3," is admitted into evidence as a document filed with the Commission on the date reflected by the Commission's date stamp on the original form contained in the Commission's file. This form is admitted into evidence for the purpose of showing it was filed with the Commission and not as evidence of the matter stated therein.
9. Industrial Commission Form 33, dated March 20, 2003, marked as "Plaintiff's Exhibit 4," is admitted into evidence as a document filed with the Commission on the date reflected by the Commission's date stamp on the original form contained in the Commission's file. This form is admitted into evidence for the purpose of showing it was filed with the Commission and not as evidence of the matter stated therein.
10. Industrial Commission Form 33R, dated May 21, 2003, marked as "Plaintiff's Exhibit 5," is admitted into evidence as a document filed with the Commission on the date reflected by the Commission's date stamp on the original form contained in the Commission's file. This form is admitted into evidence for the purpose of showing it was filed with the Commission and not as evidence of the matter stated therein.
11. The following medical records are admitted into evidence as records maintained in the regular course of activity of the physician or institution identified:
 • Plaintiff's Exhibit No. 6 Bloem Orthopaedic Center, P.A. — Dr. J. Th. Bloem — 11/28/00 — 2/26/03 (12 pages);
 • Plaintiff's Exhibit No. 7 Orthopaedics East, Inc. — Dr. Deanna M. Boyette — 10/03/02 — 6/10/03 (6 pages);
 • Plaintiff's Exhibit No. 8 Wilson Immediate Care, P.A. — Drs. Michael L. Bowen, Lawrence D. Krabill, Kenneth Carter, and Mark E. Eldridge, P.A. 1/17/93 — 2/2/03 (30 pages);
 • Plaintiff's Exhibit No. 9 Family Medicine, PA — Dr. Wallace R. Nelms, Jr. — 11/28/94 — 1/21/03 (62 pages);
 • Plaintiff's Exhibit No. 10 Wilson Memorial Hospital, Inc. — Dr. A.T. Jennette — 12/21/99 — 6/25/01 (11 pages); and
 • Plaintiff's Exhibit No. 11 Letter from counsel for plaintiff to J. Th. Bloem, M.D., dated August 22, 2003 and signed by Dr. Bloem on August 31, 2003.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff Jerry Hummer was 64 years old at the time of the hearing before the Deputy Commissioner. As of February 27, 2003, the date he last worked, Mr. Hummer had worked for defendant-employer for more than 45 years. During these 45 years he had an excellent attendance record and received several commendations for his dedication and service to his employer.
2. Mr. Hummer's work consisted primarily of operating machines that form bottles from hot molten glass. The work is strenuous and requires standing, climbing and heavy lifting.
3. On December 1, 1999, Mr. Hummer sustained an admittedly compensable injury by accident when he strained his right knee during the course of his employment. The injury occurred while Mr. Hummer was lifting an object and turning, causing his knee to twist.
4. The parties entered into a Form 21 Agreement on February 9, 2000. Pursuant to the agreement, the employer and carrier-administrator undertook to pay compensation to Mr. Hummer at the rate of $560.00 per week beginning January 14, 2000 and continuing for necessary weeks.
5. Prior to the compensable work-related injury of December 1, 1999, Mr. Hummer had never experienced any physical difficulties with his right knee that prevented him from working.
6. Mr. Hummer was treated initially for his knee injury by Dr. Lawrence D. Krabill of Wilson Immediate Care. After several office visits, Dr. Krabill referred Mr. Hummer to an orthopedic surgeon, Dr. Tyson Jennette.
7. Mr. Hummer began treatment with Dr. Jennette on December 21, 1999. On that date, Mr. Hummer reported that he had injured his right knee in a twisting incident three weeks before. He had been having symptoms of effusion and internal derangement and medial pain since that time. Dr. Jennette found moderate effusion, tenderness along the medial joint line, and a click when the knee was manipulated.
8. A December 23, 1999, MRI showed the possibility of a tear to the medial meniscus, superimposed on underlying degenerative changes. On January 14, 2000, Mr. Hummer underwent arthroscopic surgery to his right knee performed by Dr. Jennette.
9. Following the surgery, Mr. Hummer underwent physical therapy; however, his knee continued to be painful. Mr. Hummer returned to work for defendant-employer on February 16, 2000. He continued to see Dr. Jennette and continued to complain of painful symptoms in the right knee.
10. On April 18, 2000, Mr. Hummer saw Dr. Jennette, complaining of right knee pain. Dr. Jennette aspirated the knee, removed fluid, and injected the knee with medication. Mr. Hummer had approximately four days relief from this treatment. Mr. Hummer returned to Dr. Jennette on May 18, 2000 stating that his knee hurt him just as bad as ever.
11. By June 19, 2000, Mr. Hummer reported to Dr. Jennette that his knee still hurt him all of the time, at rest and when he was on his feet. It particularly hurt when he did heavy work. Dr. Jennette prescribed four weeks of physical therapy for Mr. Hummer.
12. Dr. Jennette referred Mr. Hummer for physical therapy to improve his quadriceps strength. Following this physical therapy, Dr. Jennette reported as of November 16, 2000 that Mr. Hummer's knee was a little better.
13. Mr. Hummer came under the care of Dr. J.T. Bloem on November 28, 2000. On that date, Mr. Hummer reported to Dr. Bloem that since the surgery performed by Dr. Jennette he had continued to have trouble with the knee. The knee was swollen and painful and was not getting any better. Upon examination, Dr. Bloem found that Mr. Hummer's knee did not move completely, Dr. Bloem could not straighten the knee out, nor could he bend it all the way. The knee was swollen and painful on palpation. Dr. Bloem was of the opinion that the exercises Mr. Hummer was doing at the time were not the appropriate ones, as they tended to make his symptoms worse.
14. Dr. Bloem prescribed different exercises for Mr. Hummer and a change of his medication.
15. On October 17, 2001, after conservative treatment failed, Dr. Bloem performed a second arthroscopic surgery to Mr. Hummer's right knee to correct tears of the anterior meniscus and medial meniscus. This surgery, as all of Dr. Bloem's treatment, was provided by defendant-employer and treated by defendant-employer as work-related.
16. Following a period of recovery from surgery, Dr. Bloem released Mr. Hummer to return to regular duty on January 8, 2002. Following his return to work, Mr. Hummer continued to perform his usual duties, but he continued to experience pain in the knee and difficulty climbing and squatting.
17. During the period that Mr. Hummer was out of work as a result of surgery and treatment to his knee by Dr. Bloem, he was paid temporary total disability benefits by defendant-carrier through January 8, 2002.
18. Following his return to work on January 8, 2002, and as a result of his compensable injury, Mr. Hummer no longer worked any overtime, although he had worked overtime frequently before the work-related injury to his knee.
19. Mr. Hummer saw Dr. Bloem on two more occasions during the year 2002. On March 11, 2002, Dr. Bloem noted that depending on Mr. Hummer's work activities, his pain and symptoms were worse. Dr. Bloem demonstrated some exercises to Mr. Hummer and gave him a handout describing the exercises. At that visit, Dr. Bloem was of the opinion that Mr. Hummer was at maximum medical improvement and assigned him a 10% permanent partial impairment of the right leg.
20. Mr. Hummer has never been paid any workers' compensation benefits for a permanent partial disability rating to his knee.
21. On July 25, 2002, Mr. Hummer continued to work, and saw Dr. Bloem again. Mr. Hummer reported that nothing much had changed except that every now and then his knee would give out and catch. Dr. Bloem injected the knee with medication.
22. On October 3, 2002, Mr. Hummer was seen by Deanna M. Boyette, M.D., an orthopedic surgeon in Greenville. On that date, Mr. Hummer reported that he had had an on-the-job injury two years ago when he tore a meniscus and that since that time, his right knee had continually hurt and had gotten worse. Mr. Hummer reported that he was having some difficulty doing his job because of this. He reported to Dr. Boyette that he was a hard worker and would like to continue his work, but that his knee was causing him trouble with twisting, and he was concerned about injuring the knee or possibly falling into a machine.
23. Dr. Boyette explained to Mr. Hummer that his options were to live with his pain and try and do his job; try to change his medication; consider a Synvisc series of injections; or consider a total knee replacement. Dr. Boyette strongly recommended that Mr. Hummer have a functional capacity evaluation to determine safety parameters for his knee. She was of the opinion that Mr. Hummer had a permanent partial disability of the right knee of 20%.
24. On February 26, 2003, Mr. Hummer again saw Dr. Bloem. By that time, Mr. Hummer reported that working the way he was working had become unbearable. X-rays revealed that plaintiff's condition had worsened to the point that he had bone-to-bone contact with no cartilage. After examination, Dr. Bloem concluded that the load on Mr. Hummer's knee was too much. At that point he gave Mr. Hummer permanent restrictions to light work only with limited walking and standing, and no climbing ladders.
25. Defendant-employer has had no light duty work available for plaintiff to perform. As a result, plaintiff has not worked for defendant-employer or any other employer since February 26, 2003.
26. Before Mr. Hummer's compensable injury, he performed all of his work duties without difficulty. Following the injury to his right knee, Mr. Hummer had increased difficulty in walking, stooping and climbing. As of February 26, 2003, Mr. Hummer was no longer able to perform his work duties as a result of his work-related injury.
27. The condition of Mr. Hummer's knee which caused Dr. Bloem to impose permanent light-duty restrictions on February 26, 2003 is directly related to Mr. Hummer's work-related accident.
28. But for the work-related injury to Mr. Hummer's right knee, Mr. Hummer would still be able to perform his full duties at his job with defendant-employer.
29. Throughout the year 2003, Mr. Hummer received conservative treatment from Dr. Boyette. On April 15, April 24, and April 29, Dr. Boyette performed a series of Synvisc injections to Mr. Hummer's right knee. The injections provided Mr. Hummer temporary relief from his right knee pain.
30. Mr. Hummer may continue to have a series of Synvisc injections every six months for as long as the injections are effective.
31. The treatment provided by Dr. Boyette was in an effort to provide relief from the symptoms of Mr. Hummer's work-related injury. This treatment has provided plaintiff more relief than treatment received by his other doctors. Dr. Boyette is also easier for plaintiff to understand.
32. Since February 27, 2003, Mr. Hummer has experienced a significant decrease in earning capacity as a result of his compensable injury by accident, as he has not been able to perform his usual employment with defendant-employer.
33. As a result of his compensable injury by accident of December 1, 1999, plaintiff was incapable of earning any wages with defendant-employer or any other employer from February 27, 2003 through the date of the hearing before the Deputy Commissioner.
34. Mr. Hummer's employer has not offered him work within his restrictions since February 26, 2003.
35. Defendants offered no evidence that Mr. Hummer was capable of obtaining suitable alternative employment consistent with his restrictions.
36. Mr. Hummer is entitled to the payment of temporary total disability benefits beginning February 27, 2003 and continuing until such time as his period of disability ends or until further Order of the Commission.
37. Mr. Hummer was paid short-term disability benefits wholly-funded by defendant-employer for a period of 26 weeks, from March 14 through September 5, 2003.
38. Mr. Hummer's request to change treating physician from Dr. Bloem to Dr. Boyette is reasonable under the circumstances.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of his admittedly compensable work-related injury of December 1, 1999, Mr. Hummer has experienced a period of disability beginning February 27, 2003 and continuing until such time as his disability ends, until plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to payment of workers' compensation benefits in the amount of $560.00 per week beginning February 27, 2003 and continuing until such time as his disability ends or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. After plaintiff met his burden of showing disability from working for defendant-employer, the employer failed to meet its burden of showing that plaintiff is capable of obtaining other suitable employment. Watsonv. Winston-Salem Transit Authority, 92 N.C. App. 473, 374 S.E.2d 483
(1988).
4. The medical treatment provided by Dr. Boyette was necessary to effect a cure, provide relief or lessen plaintiff's disability.Plaintiff is entitled to such medical treatment and supplies as may reasonably be required to effect a cure of or give relief from the medical condition resulting from the accident of December 1, 1999, including the treatment provided by Dr. Boyette. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1. Plaintiff is entitled to a change of treating physician to Dr. Boyette.
5. Defendant-employer is entitled to a credit for short-term disability benefits paid to plaintiff. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation in the amount of $560.00 per week beginning February 27, 2003 and continuing until further Order of the Commission, subject to the attorney's fee contained in Paragraph 4. Portions of this amount have accrued and shall be paid in a lump sum.
2. Defendant-employer shall have a credit of 75% of the amounts actually paid to plaintiff as short-term disability benefits during the period from March 14 through September 5, 2003.
3. Defendants shall provide necessary medical treatment reasonably related to plaintiff's compensable work-related injury by Dr. Deanna Boyette and Dr. Boyette shall be plaintiff's authorized treating physician.
4. Defendants shall pay an attorney's fee to plaintiff's counsel in the amount of 25% of the benefits awarded to plaintiff. Plaintiff's counsel shall be paid directly by defendants the amount of 25% of accrued benefits due and shall be paid every fourth workers' compensation check for payments made from this date forward.
5. Defendants shall pay the costs.
This the 27th day of October 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER