* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * * ORDER
On July 9, 2008, following the hearing before the Full Commission, Defendants filed a Motion to Compel Compliance with Vocational Rehabilitation. As grounds for the Motion, Defendants alleged that Plaintiff's failure to attend daytime GED classes at Pitt Community *Page 2 
College constituted an unjustifiable refusal to comply with vocational rehabilitation. Dr. Robert C. Turner excused Plaintiff from attending daytime classes, due to medication-related sleep issues. Dr. Turner allowed Plaintiff to resume his nighttime GED classes, and Plaintiff is attending nighttime GED classes. Defendants' Motion to Compel filed July 9, 2008 is DENIED.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
2. The parties and the case are subject to the North Carolina Workers' Compensation Act.
3. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings, and all parties are properly before the North Carolina Industrial Commission.
4. An employment relationship existed between the parties at the time of Plaintiff's September 24, 2003 work injury.
5. Universal Underwriters Group provided workers' compensation insurance coverage at all times relevant to these proceedings.
6. Defendants accepted Plaintiff's September 24, 2003 work injury as compensable, and Plaintiff received temporary total disability benefits in the amount of $518.73 per week, beginning October 23, 2003. Subsequent to the Full Commission hearing, the parties stipulated that Plaintiff's average weekly wage is $812.78, yielding a compensation rate of $541.88 per *Page 3 
week, and Plaintiff received compensation for this under-payment.
7. There is a dispute between the parties regarding medical treatment and the necessity for vocational rehabilitation. Plaintiff alleges that due to his September 24, 2003 work injury, as well as due to his age, his education, and his work experience, he is totally and permanently disabled, and thus entitled to receive lifetime compensation, and further entitled to cease all vocational rehabilitation efforts.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit 1 — Pre-trial Agreement;
 b. Stipulated Exhibit 2 — North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit 3 — Plaintiff's medical and vocational records;
 d. Stipulated Exhibit 4 — Plaintiff's Interrogatories;
 e. Stipulated Exhibit 5 — Defendants' Interrogatories;
 f. Stipulated Exhibit 6 — Plaintiff's employment records;
 g. Stipulated Exhibit 7 — Carrier records.
 * * * * * * * * * * * ISSUES
Plaintiff contends that the issues for determination are:
1. Whether Plaintiff is entitled to further medical treatment under the North Carolina Workers' Compensation Act, including whether treatment rendered by Dr. Robert Turner is related to Plaintiff's September 24, 2003 work injury, and is reasonably designed to effect a cure, to give relief, or to lessen the period of Plaintiff's disability? *Page 4 
2. Whether Plaintiff is totally and permanently disabled as a result of his September 24, 2003 work injury, taking into account his age, his education, his work experience, and his physical condition?
Defendants contend that the issues for determination are:
1. Which physicians are authorized to treat Plaintiff for his September 24, 2003 work injury?
2. Whether Plaintiff is failing to comply with reasonable vocational rehabilitation?
 * * * * * * * * * * *
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff's date of birth is September 8, 1948, and at the time of the hearing before the Deputy Commissioner, he was 58 years old. Plaintiff has an eighth grade education, and he does not have a GED.
2. Plaintiff's prior work experience consists of plumbing, heating and air conditioning work, automotive work, and welding work. Plaintiff began working for Defendant-Employer in the truck assembly business in approximately 1991. He worked as a mechanical welder. His main job was preparing trucks sold to customers to the customers' specifications. His job involved a variety of medium to heavy duties, such as cleaning the chassis, installing a lift gate, lifting oxygen tanks and other heavy items, and performing some plumbing with the brake lines.
3. On September 24, 2003, Plaintiff sustained a compensable work injury to his low back when his left foot slid out from under him as he was lifting a piece of channel iron *Page 5 
weighing approximately 100 pounds. Prior to Plaintiff's September 24, 2003 work injury, he underwent a left L5-S1 laminectomy, and a left L5-S1 re-do laminectomy.
4. After Plaintiff's September 24, 2003 work injury, Dr. Robert Turner initially saw Plaintiff on September 25, 2003, and diagnosed Plaintiff with sciatica on the left side. Plaintiff's symptoms did not improve; therefore, he sought emergency treatment at Pitt County Memorial Hospital on September 27, 2003. The emergency room physician at Pitt County Memorial Hospital recommended that Plaintiff follow up with Dr. Turner, as well as with Dr. Scot Reeg. The emergency room physician also ordered an MRI.
5. On October 6, 2003, Dr. Turner noted that Plaintiff had a disc problem probably at the L4-L5 level or the L5-S1 level of Plaintiff's spine. At that time, Dr. Turner excused Plaintiff from work until his October 14, 2003 return visit. An October 10, 2003 MRI revealed a moderately large, left-sided herniated disc at the L5-S1 level of Plaintiff's spine. Plaintiff continued to be excused from work, and Dr. Turner referred Plaintiff to Dr. Ira Hardy.
6. On November 17, 2003, Plaintiff saw Dr. Hardy, at which time Plaintiff reported back pain, as well as pain down into his left leg. Dr. Hardy diagnosed Plaintiff with a left L5-S1 extruded disc, and recommended a left L5-S1 laminectomy, with excision of the extruded and of the protruded disc. Plaintiff underwent the left L5-S1 laminectomy, performed by Dr. Hardy, on November 25, 2003. Following the surgery, Plaintiff remained excused from work, and continued to receive treatment from Dr. Hardy.
7. On January 7, 2004, Plaintiff reported a pulling sensation in his left calf, and some decreased sensation in his left foot. Plaintiff returned to Dr. Hardy on February 18, 2004, and continued to report left leg pain. Dr. Hardy continued conservative treatment, including pain medications. Plaintiff's symptoms did not improve, and Dr. Hardy ordered a myelogram and a *Page 6 
CT scan. On April 14, 2004, Dr. Hardy reviewed the results of the myelogram and the CT scan, which revealed blunting of the left S1 nerve root, and a residual disc bulge at the L5-S1 level of Plaintiff's spine.
8. On May 19 2004, Plaintiff returned to Dr. Hardy, who gave Plaintiff three options regarding his continued pain: (1) do nothing; (2) return to work at a sedentary job; or (3) re-operation. Plaintiff chose additional surgery. Following an additional MRI, which revealed a recurrent disc fragment beneath the left S1 nerve root, Dr. Hardy performed a left L5-S1 re-do laminectomy on July 16, 2004. Plaintiff reported an improvement in his left leg pain after the surgery.
9. On October 11, 2004, Dr. Hardy noted a discussion with Plaintiff concerning releasing Plaintiff to return to work for half-days; however, Plaintiff informed Dr. Hardy that Defendant-Employer would not allow this arrangement.
10. On January 7, 2005, Plaintiff returned to Dr. Hardy and indicated that he felt the tightness and the discomfort in his left leg prevented him from returning to work. Dr. Hardy ordered a myelogram and post-contrast CT to determine if Plaintiff would require a disc replacement at the L5-S1 level of Plaintiff's spine. Thereafter, Dr. Kurt Voos, who is in the same practice group as Dr. Hardy, began treating Plaintiff.
11. On February 2, 2005, Dr. Voos evaluated Plaintiff. At that time, Plaintiff reported pain when walking and when sitting. Dr. Voos recommended a single left nerve root block at the L4-L5 level of Plaintiff's spine, but if only short-term relief resulted, Dr. Voos recommended a decompressive surgery. In a follow-up appointment on February 25, 2005, Dr. Voos reviewed the results of a discogram, which revealed a significant diffuse disc bulge and significant extravasation at the L4-L5 level of Plaintiff's spine, as well as significant extravasation and *Page 7 
evidence of vacuum disc phenomena at the L5-S1 level of Plaintiff's spine. As a result, Dr. Voos recommended fusion surgery.
12. On August 30, 2005, Plaintiff underwent his third surgery, a transforaminal lumbar interbody fusion, at the L4-L5 level of Plaintiff's spine and the L5-S1 level of Plaintiff's spine, as well as a posterior spinal fusion to the L4 to S1 level of Plaintiff's spine, with instrumentation and bone marrow aspiration, performed by Dr. Voos. In a subsequent visit on November 23, 2005, Plaintiff reported some relief initially, but that the pain had returned at the same intensity where it began. Dr. Voos prescribed Neurontin, and recommended physical therapy, as well as a work-hardening program. Plaintiff returned to Dr. Voos on January 11, 2006 with little relief from pain resulting from physical therapy. At that time, Dr. Voos recommended a CT myelogram to rule out any neurologic impingement, and if there were no significant findings, then a pain clinic evaluation for a possible spinal cord stimulator.
13. On February 27, 2006, following a functional capacity evaluation, Dr. Voos released Plaintiff from his care, and assigned Plaintiff a permanent partial disability rating of 25 percent to his back, with permanent light duty work restrictions. Dr. Voos also provided prescriptions for Ultram, for Lortab, and for Lyrica, with the hope that Dr. Turner would be able to refill these medications for Plaintiff.
14. On April 26, 2006, Plaintiff returned to Dr. Turner, his family physician, for refills of medications. Despite taking these pain medications, Plaintiff's symptoms did not improve, and Plaintiff requested a second opinion from Dr. William Lestini. On August 3, 2006, Dr. Turner completed a referral to Dr. Lestini; however, Defendants refused to authorize this evaluation with Dr. Lestini. Due to Defendants' refusal to authorize this second opinion with Dr. *Page 8 
Lestini, Plaintiff used his own personal health insurance to pay for the evaluation with Dr. Lestini.
15. The treatment Plaintiff received and continues to receive from Dr. Turner is reasonably required to provide relief and to lessen the period of Plaintiff's disability from his September 24, 2003 work injury. Plaintiff requires continuing treatment from Dr. Turner in order to manage his medications and to treat his pain related to his September 24, 2003 work injury.
16. On October 17, 2006, Plaintiff saw Dr. Lestini, at which time Plaintiff described back pain and left leg pain. Dr. Lestini noted that Plaintiff may have partial or non-union at the L4-L5 level of Plaintiff's spine, and that his back pain may be from scar tissue from the multiple surgeries, which may be aggravated by the hardware itself. Dr. Lestini indicated that Plaintiff's left leg pain is either neuritic pain from scar tissue, or elements of complex regional pain syndrome. For Plaintiff's back pain, Dr. Lestini recommended a discography, subsequent CT imaging, possible posterior revision with hardware removal, as well as extending the fusion procedure. Alternatively, if Plaintiff did not wish to pursue further surgical procedures, Dr. Lestini noted that continued pain management through Dr. Turner would be recommended. For Plaintiff s left leg pain, Dr. Lestini recommended an EMG and nerve conduction studies, and that Plaintiff consider the possibility of a trial spinal cord stimulator. Plaintiff has yet to undergo either the discography, the EMG, or the nerve conduction studies recommended by Dr. Lestitini.
17. Defendants scheduled Plaintiff for a return visit to Dr. Voos on January 15, 2007. At that time, Dr. Voos agreed with Dr. Lestini's recommendation for a CT scan with possible discography. Dr. Voos also set Plaintiff up for an evaluation for a spinal cord stimulator at Pitt County Memorial Hospital. On April 2, 2007, Plaintiff returned to Dr. Voos, but he had not *Page 9 
undergone the spinal cord stimulator evaluation. Dr. Voos ordered a discogram and post discogram CT in order to evaluate the L3-L4 level of Plaintiff's spine, per Dr. Lestini's recommendation.
18. Dr. Voos opined, and the Full Commission so finds, that Plaintiff is not permanently and totally disabled at this time, as there still exists some reasonable potential that he may be able to locate suitable employment after he completes his GED. However, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is currently restricted to permanent light duty work; that Plaintiff has a 25 percent permanent partial disability rating to his back; that Plaintiff's past relevant work history has been in medium to heavy labor; that Plaintiff does not have a high school diploma or a GED; that Plaintiff is currently 60 years old; that Plaintiff's testimony concerning his pain is credible and is supported by objective medical evidence; that Plaintiff presented vocational expert testimony establishing that he is currently not ready for competitive employment; and that Plaintiff needs a GED to become more employable. Thus, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is temporarily and totally disabled.
19. On November 7, 2003, Defendants accepted Plaintiff's claim as compensable via a Form 60.
20. Plaintiff has yet to return to work. Defendant-Carrier assigned a vocational rehabilitation specialist, Ms. Melodie Thomas, and began vocational rehabilitation efforts in May 2006. In her initial assessment, Ms. Thomas noted that Plaintiff's work history was in welding, and that due to his limited education as well as his physical limitations, it would be necessary to obtain a new job goal. Ms. Thomas also recommended that, in order to become more employable, it would be desirable for Plaintiff to obtain a GED. *Page 10 
21. On August 2006, Ms. Thomas completed a referral for Plaintiff to attend the East Carolina Vocational Center (ECVC), a program for individuals who are not ready for competitive employment. Ms. Thomas testified that she was unable to recommend suitable employment for Plaintiff, due to his limited work experience, his physical restrictions, and his limited physical abilities. Plaintiff attended an initial visit with ECVC, but was unable to participate, due to his injury. Plaintiff noted that the facility required closed shoes, and at that time, he was unable to wear closed shoes, due to the pain in his left leg and in his left foot. Plaintiff received a medical note from Dr. Turner, indicating that Plaintiff had pain and problems with his left leg and left foot, as well as pain while sitting or standing for extended periods of time; and, that drowsiness due to medications prevented Plaintiff from participating in the ECVC program.
22. Plaintiff's assertion that he could not wear closed-toed shoes was reasonable at the time; however, Dr. Lestini testified, and the Full Commission so finds, that Plaintiff should start to desensitize his foot in order to normalize his footwear, and referral to a podiatrist is recommended.
23. In October 2006, Plaintiff enrolled in classes to work towards his GED at Pitt Community College, but has yet to obtain his GED, or to return to any type of available, suitable employment.
24. The Full Commission gives great weight to the treatment recommendations of Dr. Lestini. Based on the treatment options still recommended for Plaintiff it does not appear that he is at maximum medical improvement. Plaintiff will continue to benefit from medical treatment from Dr. Voos and Dr. Turner and from vocational rehabilitation services provided through Defendants. *Page 11 
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
`1. Defendants generally have the right to direct the medical care of injured employees in accepted cases under the North Carolina Workers' Compensation Act. Schofield v. The Great Atlantic Pacific Tea Co.,Inc., 299 N.C. 582, 264 S.E.2d 56 (1980). However, the North Carolina Industrial Commission may at any time upon request of an employee order a change of treatment, and designate other treatment suggested by the injured employee, and an injured employee may select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission. N.C. Gen. Stat. § 97-25. In this case, Plaintiff established good grounds to designate Dr. Robert C. Turner as one of his treating physicians. The treatment provided to Plaintiff by Dr. Turner is reasonably required to effect a cure, to give relief, or to lessen the period of Plaintiff's disability. Defendants are not precluded from keeping Dr. Voos as a treating physician, or the pain clinic physician recommended by Dr. Voos, as each of these physicians provides reasonably required medical services. N.C. Gen. Stat. § 97-25.
2. The burden of proving the extent and the degree of disability is initially on Plaintiff. Watson v. Winston-Salem Transit Authority, 92 N.C. App. 473, 475, 374 S.E.2d 483, 485 (1988). N.C. Gen. Stat. § 97-2(9) defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Plaintiff failed to prove that he is permanently and totally disabled as a result of any work injury sustained during his employment with Defendant-Employer. Plaintiff proved, *Page 12 
however, that he is temporarily totally disabled through medical and vocational evidence that he is unable to return to work at this time as set forth in the findings of fact above. N.C. Gen. Stat. § 97-29.
3. Plaintiff reasonably cooperated with vocational rehabilitation services offered by Defendants and will continue to benefit from vocational rehabilitation services. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's request that Dr. Robert C. Turner be designated as an authorized treating physician is hereby GRANTED.
2. Plaintiff is temporarily and totally disabled from any employment as a result of his September 24, 2003 work injury, and Defendants shall continue to pay him temporary total disability compensation at the rate of $541.88 per week, until further order of the North Carolina Industrial Commission.
3. A reasonable attorney's fee of 25 percent of the compensation awarded to Plaintiff in paragraph 2, above, is hereby approved and shall be paid directly to Plaintiff's counsel. Every fourth payment due Plaintiff shall be deducted and paid directly to Plaintiff's counsel.
4. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred in the future as a result of his September 24, 2003 work injury, for so long as medical treatment, testing and evaluations are reasonably required to effect a cure, give relief, and/or to *Page 13 
lessen Plaintiff's period of disability when bills are presented for payment according to procedures adopted by the Industrial Commission.
5. Defendants shall pay the costs of these proceedings.
This the ___ day of September 2008.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 14